# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00203-CV

Community Health Choice, Inc., Appellant

v.

Albert Hawkins, Commissioner of Health and Human Services; and The Texas Health and Human Services Commission, Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-07-002159, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## O P I N I O N

Appellant Community Health Choice, Inc. ("CHC") sued appellees Albert Hawkins, Commissioner of Health and Human Services, ("the Commissioner") and the Texas Health and Human Services Commission ("the Commission")[1] seeking a writ of mandamus to compel the Commissioner to pay CHC $249,999 pursuant to an administrative award stemming from a breach-of-contract claim. The parties filed cross-motions for summary judgment. The trial court granted the Commissioner's motion and denied CHC's. In a single issue on appeal, CHC asserts that the trial court erred in denying its motion for summary judgment and in granting the Commissioner's

---

[1] The trial court dismissed CHC's suit against the Health and Human Services Commission for lack of subject-matter jurisdiction. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 (Tex. 2009) ("[A]s a technical matter, the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit."). CHC does not appeal the trial court's dismissal of its suit against the Commission.

because the Commissioner failed to pay a valid, non-appealable administrative award from available funds. We will reverse the trial court's order and remand the cause to the district court with instructions that it render judgment granting CHC's requested mandamus relief.

## FACTUAL AND PROCEDURAL BACKGROUND

CHC contracted with the Commission to participate in its Medicaid managed-care program. The contract required CHC to provide managed-care services to Medicaid-eligible patients, for which it received payment from the Commission in the form of a "capitation," essentially a flat fee per patient akin to an insurance premium. The Commission was responsible for enrolling and disenrolling members into CHC's managed-care plan based on their eligibility. The underlying dispute here concerned the Commission's failure to timely disenroll a Medicaid recipient from CHC's managed-care plan. CHC alleged that it paid for services provided to that beneficiary in 2002, during which time the patient did not meet eligibility requirements and therefore should not have been enrolled in CHC's plan.

CHC notified the Commission that it had a claim for a breach of the parties' contract. Pursuant to the dispute-resolution procedure in chapter 2260 of the government code, the State Office of Administrative Hearings ("SOAH") conducted a hearing and, in May 2006, awarded CHC $213,526.40 in damages plus prejudgment interest from the date of breach, with the total not to exceed $249,999. The prejudgment interest exceeded $47,000, so the total amount of CHC's recovery was capped at $249,999. A SOAH decision in such cases is final and may not be appealed. *See* Act of May 31, 1999, 76th Leg., R.S., ch. 1352, § 9, 1999 Tex. Gen. Laws 4583, 4586 (formerly Tex. Gov't Code § 2260.104(e)). Accordingly, the underlying SOAH decision here is final.

2

CHC attempted to collect on the award, but the Commissioner refused to pay. After negotiations failed, CHC sued in district court requesting a writ of mandamus to compel the Commissioner to pay the award. The parties filed cross-motions for summary judgment. CHC asserted that the plain language of government code section 2260.105 required the Commissioner to pay the award. The Commissioner argued that the legislature had not appropriated funds as required by subsection 2260.105(b), and therefore he was not required to pay the award. He contends that CHC must "seek permission [from the legislature] to sue under Chapter 107 of the Civil Practice & Remedies Code." The trial court granted the Commissioner's motion for summary judgment and denied CHC's. CHC appeals.

**STANDARD OF REVIEW**

We review the district court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A movant is entitled to summary judgment if (1) there are no genuine issues of material fact, and (2) it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). Where, as here, the parties filed overlapping cross-motions for summary judgment, we review both motions and "render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

In the present case, CHC's motion for summary judgment requests the issuance of a writ of mandamus to compel the Commissioner to pay the SOAH award. "A writ of mandamus will issue to compel a public official to perform a ministerial act. An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991).

3

In general, a writ of mandamus will not issue if the public official has discretion to perform the act requested. *Id.* There are, however, exceptions when a public official commits a clear abuse of that discretion. *Id.*; *see also Dykes v. City of Houston*, 406 S.W.2d 176, 183 (Tex. 1966); *Womack v. Berry*, 291 S.W.2d 677, 682 (Tex. 1956).

Our analysis here requires us to interpret various statutes. In doing so, our objective is to determine legislative intent. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). We look to the statute's plain meaning and construe it as a whole to give effect to every part, *see id.*, unless such a construction would lead to absurd or nonsensical results, *FKM P'ship, Ltd. v. Board of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008); *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent."). We may consider the object of the statute, legislative history, and the consequences of a proposed construction. Tex. Gov't Code Ann. § 311.023(1), (3), (5) (West 2005).

**DISCUSSION**

In support of its argument that mandamus relief is proper here, CHC asserts that the plain language of section 2260.105 of the government code compels the Commissioner to pay the SOAH award in question, leaving nothing to his discretion. Section 2260.105 states, in pertinent part:

> (a) The unit of state government shall pay the amount of the claim or part of the claim if:

4

(1) the administrative law judge finds, by a preponderance of the evidence, that under the laws of this state the claim or part of the claim is valid; and

(2) the total amount of damages, after taking into account any counterclaim, is less than $250,000.

. . . .

(b) *A unit of state government shall pay a claim under this subchapter from money appropriated to it for payment of contract claims or for payment of the contract that is the subject of the claim.* If money previously appropriated for payment of contract claims or payment of the contract is insufficient to pay the claim, the balance of the claim may be paid only from money appropriated by the legislature for payment of the claim.

Tex. Gov't Code Ann. § 2260.105 (West 2008) (emphasis added).

The parties agree that the requirements of subsection (a) have been met, but join issue over whether those in subsection (b) are satisfied—i.e., whether the Commission has money "appropriated to it for payment of contract claims or for payment of the contract that is the subject of the claim." CHC argues that the Commission had (and currently has) sufficient funds, appropriated and available, to pay the claim. It notes that the Commission's Medicaid appropriations are not funded contract by contract. Rather, the funds are appropriated to the Commission in a lump sum to apply to all Medicaid contracts. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 1424, art. II, 2009 Tex. Gen. Laws 4483, 4665-68 (general appropriations bill for 2010-2011 fiscal years) (hereinafter "2009 Senate Bill 1"). CHC contends, therefore, that any funds appropriated to pay Medicaid claims may be used to pay the award in the present case, as that award stems from the breach of a Medicaid managed-care contract. CHC also notes that each of the relevant biennial appropriations bills contains a provision authorizing the expenditure of currently appropriated funds

5

to pay Medicaid claims *regardless of the date of service* and argues that this provision authorizes payment of its award from currently appropriated funds. *See id.*, 2009 Tex. Gen. Laws at 4676.

The Commissioner argues that mandamus is improper here "because the Legislature did not appropriate money in the manner described in [subsection 2260.105(b)]." The Commissioner notes that subsection 2260.105(b) mandates payment of a SOAH award only when the legislature has appropriated money to pay either: (1) "contract claims" or (2) the specific contract that is the subject of the claim. With respect to the former, the Commissioner asserts that "[s]ection 2260.105(b), in other words, is conditioned on a specific appropriation for the payment of claims, similar to those items found in Article I [of the general appropriations bill]," meaning, essentially, money appropriated only to pay judgments or awards arising from breach-of-contract disputes. With respect to the latter, he argues that a general, lump-sum legislative appropriation for a "class" of contracts is too broad, and that subsection 2260.105(b) mandates payment only in cases where the legislature has specifically referenced the contract and funded it individually.

### The Commission's Medicaid Appropriations

The legislature funds the Commission's Medicaid coffers via a large, non-specific appropriation to the Commission. *See* 2009 Senate Bill 1, 2009 Tex. Gen. Laws at 4665-66. The current appropriations bill awards the Commission just under $36 billion for all of its operations for fiscal years 2010 and 2011. *Id.* The bill itemizes funding by source and also assigns various amounts of money to categories representing non-binding "goals" related to the Commission's mandate. Approximately $31 billion is assigned to the various Medicaid-related "goals" for the current biennium. Important for our analysis here, the bill also contains provisions allowing the

6

appropriations from the current biennium to be used to pay certain Medicaid expenses arising in past years and authorizing the transfer of more funds, if needed, to meet Medicaid-related expenses. These provisions state:

> 16. **Cash Basis Expenditures Authorization**. Notwithstanding any other provision of this Act, the [Commission] is authorized to expend Medicaid appropriations in a fiscal year without regard to date of service. The authorization herein is limited to expenditures for claims payments, premiums, cost settlements and other related expenses for Medicaid client services.
>
> . . . .
>
> 19. **Additional Funding Sources, Medicaid.** Notwithstanding any other provision of this Act, if the appropriations provided for a Medicaid program are not sufficient to provide for expenditures mandated by either state or federal law, after accounting for any appropriations made to the agency operating the Medicaid program, and available for transfer to the Medicaid program, the Legislative Budget Board and the Governor may provide for and are hereby authorized to direct the transfer of sufficient amounts of funds to the [Commission] from appropriations made elsewhere in this Act.

*Id.*, 2009 Tex. Gen. Laws at 4676.

In her deposition, Tracy Henderson, the Commission's Chief Financial Officer, explained that the Commission's funding for Medicaid contracts comes from general, lump-sum appropriations. She testified that, while the appropriations bill appears to assign certain amounts of money for numerous "performance target measures," "goals," or "strategies" for different Medicaid programs, those figures are, in fact, merely targets and not legislative limitations on how much of the appropriated money the Commission may spend on any one Medicaid program or contract. Henderson testified:

7

Q. So the funding is a, an amount of money is appropriated to [the Commission] for, for example, this Medicaid goal, I'll call it.

A. Uh-huh, yes.

Q. And I certainly don't see any, anything broken down in here. We've already talked about how it's not broken down by delivery, service delivery model. It's certainly also not broken down by individual contracts.

A. Correct.

Q. And the State, [the Commission] will enter into contracts, for example, with managed care organizations who participate in Medicaid managed care. Correct?

A. Yes.

Q. And there's nothing in the Appropriations Bill that separates out what money is set aside to pay for a particular contract, is there?

A. No.

Q. So the authority that [the Commission] would have to make any payments that may be required under any particular contract are all part of this larger appropriations.

A. Yes.

. . . .

Q. But if the State is paying premiums under a contract with an MCO, managed care organization, who participates in Medicaid managed care, those premium dollars are, at least for Star, [the relevant program here] are subsumed somewhere in one of these first four [appropriation] strategies?

A. Yes.

Q. The money appropriated for these different strategies.

A. (The witness moved her head up and down.)

8

Henderson also testified that, although the appropriations bill budgets certain funds to be spent during a specific year, the entire sum is available, if needed, at any time during the two-year period.

## *Chapter 2260*

To give context to the parties' arguments, we will briefly outline the administrative dispute-resolution procedures in chapter 2260 of the government code. Enacted in 1999, chapter 2260 was "[i]ntended to promote mediation and settlement" between the State and its contractors and serves as a prerequisite to seeking permission from the legislature to sue the State for breach of contract. *General Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 595, 597 (Tex. 2001); *see also* Tex. Gov't Code Ann. § 2260.005 (West 2008). Chapter 2260 applies to "written contract[s] between a unit of state government and a contractor for goods or services, or for a [construction] project as defined by Section 2166.001." Tex. Gov't Code Ann. § 2260.001(1) (West 2008).

After a contractor brings a claim against a unit of state government, the contractor and the governmental unit must negotiate. *Id.* § 2260.052 (West 2008). If negotiations fail, the contractor may refer the matter to a SOAH administrative law judge ("ALJ"). *Id.* § 2260.102(c) (West 2008); *see also Hawkins v. Community Health Choice, Inc.*, 127 S.W.3d 322, 326-27 (Tex. App.—Austin 2004, no pet.) (upon receipt of hearing request, agency *must* refer matter to SOAH). At the time relevant to this appeal, a SOAH decision was not appealable. *See* Act of May 31, 1999,

9

76th Leg., R.S., ch. 1352, § 9, 1999 Tex. Gen. Laws 4583, 4586 (formerly Tex. Gov't Code § 2260.104(e)).²

If the administrative law judge finds in favor of the contractor and awards less than $250,000, the governmental unit must pay the claim. *Id.* § 2260.105(a). If, however, the award is greater than $250,000, then the governmental unit must pay only the part of the claim that is under $250,000. *Id.* § 2260.105(a-1). Any payment must be from "money appropriated to [the governmental unit] for payment of contract claims or for payment of the contract that is the subject of the claim." *Id.* § 2260.105(b). If there are no such appropriated funds available, then the claim may be paid only from "money appropriated"—presumably at some later date—"by the legislature for payment of the claim." *Id.* Recovery of more than $250,000, however, requires a specific legislative appropriation. *Id.* If the SOAH judge "determines that a claim involves damages of $250,000 or more," then the judge must issue a written report with appropriate findings and recommendations to the legislature. *Id.* § 2260.1055 (West 2008). The judge may recommend that the legislature (1) appropriate money to pay the claim or (2) not appropriate money to pay the claim and deny consent to sue. *Id.* The legislature, of course, may accept or reject the judge's recommendations.

Section 2260.003 limits the award of damages to (1) the balance due and owing on the contract, (2) the fair market value of change orders to the extent that work was actually done, and (3) any delay or labor-related expense as a result of the State's failure to timely pay on the contract.

---

² An ALJ's decision may now be appealed for abuse of discretion. Tex. Gov't Code Ann. § 2260.104(e)(1) (West 2008) (applicable to claims made after September 1, 2005).

*Id.* § 2260.003(a) (West 2008). Under no circumstances may a contractor be awarded damages for (1) consequential damages except for delay or labor-related expenses, (2) exemplary damages, (3) any damages based on unjust enrichment, (4) attorney's fees, or (5) home office overhead. *Id.* § 2260.003(c).

We draw several conclusions from our review of chapter 2260. First, it provides a comprehensive administrative scheme that attempts to settle or adjudicate breach-of-contract claims outside the courts. *See Little-Tex Insulation*, 39 S.W.3d at 597. Second, the chapter provides a forum for administrative dispute resolution and a procedure whereby a claimant who is owed money by the State can, in certain cases, recover without the inconvenience and delay of seeking legislative permission to sue and, for certain relatively low-dollar claims, without having to request the money from the legislature directly. Third, the mandatory payment language of section 2260.105 indicates that the legislature struck a balance between efficiency and control—allowing direct disposition of relatively low-dollar, adjudicated claims for which money was already appropriated, yet keeping a tight rein on the purse strings when greater sums were at stake. *See id.* § 2260.105.

### *Section 2260.105 Mandates Payment Here*

We must construe the plain language of subsection 2260.105(b) in the broader context of chapter 2260 and in concert with the legislative appropriations relevant here. Doing so, we conclude that here there is "money appropriated for the payment of contract claims." In the present case, the legislature has currently appropriated money to the Commission to pay a variety of Medicaid-related contracts. It also made the current biennium's funding available to pay Medicaid claims, premiums, cost settlements, and other related expenses for client services

11

regardless of treatment date. This type of appropriation is sufficient to fall within section 2260.105's payment mandate.[3]

The Commissioner argues that the legislature did not appropriate money for payment of chapter 2260 "contract claims" during the relevant time periods. He argues that

> Had the Legislature intended to fund payment of Chapter 2260 "contract claims," it surely knew how to express that intent. The [2007 general appropriations bill], for example, contains specific appropriation authority for the Comptroller to pay miscellaneous claims under section 403.074 of the Government Code. It also contains specific authority to pay claims arising under the Texas Tort Claims Act . . . as well as federal court claims. The Legislature did not include similar language for the payment of contract claims under Chapter 2260.

The Commissioner's argument assumes that the phrase "money appropriated for the payment of contract claims" in subsection 2260.105(b) refers only to funds specifically appropriated to pay judgments or, as in this case, SOAH awards from the administrative resolution of breach-of-contract disputes. We are not persuaded, however, that the legislature intended such a narrow meaning.

Our interpretation is consistent with the plain meaning of the statutory language. A "claim" means an "assertion of an existing right" or, when used as a verb, "to demand money, property, or a legal remedy to which one asserts a right." Black's Law Dictionary 281-82

---

[3] Because the current appropriations bill authorizes the payment of Medicaid claims regardless of the date of service, we need not address whether the Texas Constitution's two-year limit on appropriations bills would prohibit payment of older claims under a statutory scheme that lacked such a provision. *See* Tex. Const. art. VIII, § 6 ("nor shall any appropriation of money be made for a longer term than two years"). Also, because we hold that there is "money appropriated for the payment of contract claims," we need not address whether there is "money appropriated . . . for payment of the contract that is the subject of the claim."

(9th ed. 2009). Thus, a "contract claim" is simply an assertion of an existing right to payment under a contract.

There is no substantive difference between an undisputed (and subsequently paid) "contract claim" and one that has been reduced to an administrative award, nor can we discern from chapter 2260 that the legislature intended to make such a distinction. Both "claims" are really the same thing: assertions of an existing right to payment under a contract. We see no reason to impose an artificial distinction merely because a contract claim has been adjudicated. We assume that in the vast majority of instances when a contractor asserts a right to payment under a contract—such as when it sends the agency a bill for services rendered—the agency pays it. Money to pay that claim comes from funds appropriated by the legislature to the agency to pay contractors for the goods and services they provided to that agency—i.e., money appropriated to it to pay contract claims. In a few instances, however, disputes arise. In those cases, the disputes may be adjudicated in the contractor's favor, producing an administrative award that resulted from the contractor's claim. In either case, it is reasonable to assume that the legislature intended for the payment demands to be paid out of funds previously appropriated to pay those claims.

Our interpretation is also consistent with the balance that chapter 2260 strikes between efficiency and legislative fiscal control. Interpreting subsection 2260.105(b) to allow recovery here maintains that balance by allowing contractors with meritorious claims to be paid with little or no effect on the State's budget. As noted above, section 2260.003 caps the maximum damage award at the contract price plus work actually done by the contractor on authorized change orders and, in some instances, delay-related consequential damages. With such a cap on damages

13

in place, the amount of any award would be very close to the previously budgeted and appropriated amount of that contract. It makes sense, then, that with the State's exposure thus limited and the budgeting and appropriating already done, the legislature would be comfortable ordering payment directly by the affected agency from those budgeted and appropriated funds.

Moreover, interpreting the statutory language at issue here to require a separate legislative appropriation to pay only for disputed "breach-of-contract" claims would, in effect, allow agencies to "opt out" of section 2260.105's mandatory payment provisions by merely failing to request such funding from the legislature. Because section 2260.105 creates a mandatory payment obligation, we do not believe the legislature intended to create such a loophole, one that would potentially undermine the entire statutory scheme.

Finally, the Commissioner argues that *Mutchler v. Texas Department of Public Safety*, 681 S.W.2d 282 (Tex. App.—Austin 1984, no writ) is dispositive here. In that case, legislation purported to award supplemental pay to certain DPS officers, but the legislature failed to appropriate money to fund the supplements. *Id.* at 284. We held that surplus money could not be diverted from elsewhere to fund the supplements. *Id.* Our holding in *Mutchler* does not support the Commissioner's position. In *Mutchler*, the legislature had not appropriated money to fund the supplemental pay, whereas here an appropriation for the payment of contract claims has been made and the necessary funding is available. Furthermore, supplemental employee pay requires specific, line-item funding. The same is not true here. In *Mutchler*, we noted that "[t]he Coordinator of the Legislative Budget Board testified at trial that any payments for supplemental or overtime pay must come from a specific 'line item' appropriation." *Id.* at 285. Here, the opposite is true. The

appropriations bill itself and testimony from the Commission's Chief Financial Officer show that money to pay Medicaid contracts comes from a lump-sum appropriation to the Commission.

We conclude that money has been appropriated and is currently available to the Commission to pay CHC's claim. Further, we hold that section 2260.105's mandatory language requires payment of CHC's claim and leaves nothing to the Commissioner's discretion; accordingly, mandamus is proper here. *See Anderson*, 806 S.W.2d at 793. We therefore sustain CHC's issue on appeal.

## CONCLUSION

Having concluded that mandamus is proper here, we hold that the trial court erred in granting summary judgment for the Commissioner and in denying CHC's motion for summary judgment. We therefore reverse the trial court's judgment and remand the cause to the trial court with instructions to render judgment granting CHC's requested mandamus relief. The trial court should allow the Commissioner a reasonable time to voluntarily comply with its judgment. If the Commissioner fails to comply, the trial court shall order the district clerk to issue a writ of mandamus and may conduct enforcement proceedings as necessary.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Reversed and Remanded

Filed: June 17, 2010

15