# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-13-00625-CV

**Dr. Kyle Janek, Executive Commissioner of Texas Health and Human Services Commission; and Doug Wilson, Inspector General for the Office of Inspector General, Appellants**

**v.**

**Harlingen Family Dentistry, P.C., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. D-1-GN-13-001557, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

### O P I N I O N

Harlingen Family Dentistry, P.C. (the Dental Group) sued Dr. Kyle Janek, Executive Commissioner of the Texas Health and Human Services Commission (HHSC), and Doug Wilson, Inspector General for the Office of Inspector General (OIG), (collectively, the State) in Travis County district court seeking a writ of mandamus to compel them to comply with a final HHSC order reducing a Medicaid "payment hold" previously imposed by the OIG. *See* Tex. Gov't Code § 531.102(g)(2) (authorizing OIG to impose "payment hold" on payment of claims for Medicaid reimbursement on receipt of reliable evidence that circumstances giving rise to hold on payment involve "fraud or wilful misrepresentation"); Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 2.103, 2003 Tex. Gen. Laws 690 (amended 2013) (current version at Tex. Human Res. Code § 32.0291) (hereinafter "Former Tex. Human Res. Code § 32.0291") (same). The district court granted the

petition and issued a writ of mandamus directing Janek and Wilson to release to the Dental Group $1,255,195.20, which represented 91% of the amount of funds held from the date the payment hold was imposed through the date of HHSC's final order. On appeal, the State asserts that mandamus was not available because, in its view, HHSC's final order did not direct it to release any funds already held but merely reduced the amount of the payment hold that could be imposed going forward. Thus, the State contends that HHSC and the OIG did not have a ministerial duty to release the funds already held and that the Dental Group's claim is therefore barred by sovereign immunity. Concluding that HHSC and the OIG did have such a ministerial duty, we will affirm the district court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

HHSC is the state agency designated to administer the Texas Medicaid program. *See* Tex. Gov't Code § 531.021(a). Through its OIG, HHSC is responsible for investigating fraud and abuse and enforcing state laws related to the Medicaid program. *Id.* Texas law permits HHSC (and commands the OIG) to impose, without prior notice, a "payment hold" on Medicaid reimbursements to a Medicaid provider upon receiving reliable evidence of "fraud or wilful misrepresentation" by the provider under the state Medicaid program. *Id.* § 531.102(g)(2) ("[IOG] shall impose"); Former Tex. Human Res. Code § 32.0291(b) ("[HHSC] may impose").[1] A Medicaid provider subject to

_____

[1] Both of the cited statutes have been amended since this case began. In 2011, the time period relevant to this case, section 531.102(g)(2) provided in relevant part:

> In addition to other instances authorized under state or federal law, the office [of Inspector General] shall impose without prior notice a hold on payment of claims for reimbursement submitted by a provider . . . on receipt of reliable evidence that the

2

such a hold may request an expedited administrative hearing before the State Office of Administrative Hearings (SOAH) regarding the hold.  Tex. Gov't Code § 531.102(g)(3); Former Tex. Human Res. Code § 32.0291(c).

The duration of such a hold is not indefinite but depends initially on the outcome of the expedited SOAH hearing.  Former section 32.0291(c) provided that HHSC "shall discontinue the hold unless [HHSC] makes a prima facie showing at the hearing that the evidence relied on by [HHSC] in imposing the hold is relevant, credible, and material."  Former Tex. Human Res. Code § 32.0291(c).

The Dental Group is a Texas Medicaid provider of dental and orthodontia services. In 2011 HHSC and the OIG opened a fraud investigation into the Dental Group's orthodontia billings.  In conjunction with the investigation, the OIG instituted a payment hold on 100% of the

---

circumstances giving rise to the hold on payment involve fraud or wilful misrepresentation under the state Medicaid program in accordance with 42 C.F.R. Section 455.23, as applicable.

Act of May 28, 2011, 82d Leg., R.S., ch. 879, § 3.11, 2011 Tex. Gen. Laws 2234-35 (amended 2013) (current version at Tex. Gov't Code § 531.102).  In 2013 this provision was amended to read, in part:

In addition to other instances authorized under state or federal law, the office [of the Inspector General] shall impose without prior notice a payment hold on claims for reimbursement submitted by a provider . . . on the determination that a credible allegation of fraud exists, subject to Subsections (*l*) and (m) as applicable.

Tex. Gov't Code § 531.102(g)(2).  Likewise, at the time period relevant to this case, former section 32.0291 of the Texas Human Resources Code permitted HHSC to impose a postpayment hold on payment of future claims submitted by a provider if HHSC had "reliable evidence that the provider has committed fraud or wilful misrepresentation regarding a claim for reimbursement under the medical assistance program."  Former Tex. Human Res. Code § 32.0291(b).

Dental Group's Medicaid billings for orthodontia services (which constituted 40% of the Dental Group's total Medicaid reimbursements). Upon the Dental Group's request for an expedited hearing concerning the payment hold, SOAH conducted a hearing to determine whether there was a credible allegation of fraud to support the payment hold. At the conclusion of this hearing, the administrative law judge (ALJ) hearing the matter concluded that "Staff has not made a sufficient showing to support a payment hold against [the Dental Group] based on suspected fraud or misrepresentation." The ALJ also found, however, that the Dental Group had billed for non-reimbursable services or made other billing errors in 9% of the cases reviewed. As a result, the ALJ issued a Proposal for Decision (PFD), including findings of fact and conclusions of law, recommending that "any payment hold against [the Dental Group] be reduced to 9 percent of the 40 percent of [the Dental Group's] total Medicaid reimbursement that is related to orthodontics . . . ." HHSC adopted the ALJ's findings and conclusions and incorporated them into a final administrative order with an effective date of January 7, 2013. HHSC's order required that the payment hold "be reduced to 9 percent of [the Dental Group's] total Medicaid reimbursement that is related to orthodontics . . . ." By the date of this order, the total amount of funds already withheld as a result of the payment hold was approximately $1,379,195. The order became final, and neither party brought suit for judicial review. The meaning and effect of HHSC's administrative order, read in conjunction with the language of the relevant statutes and regulations, is the central issue in this appeal.

Believing that the order constituted a clear directive to HHSC and the OIG to release to the Dental Group 91% of the Medicaid reimbursements sequestered through January 7, 2013, the Dental Group demanded that the OIG pay that amount to it. The State officials refused, taking the

4

position that the final order did not address the disposition of any reimbursements impounded before the date of the order but instead had only the prospective effect of reducing the amount that could be withheld in the future. The Dental Group then sued in district court requesting a writ of mandamus to compel Janek and Wilson to "release funds withheld in violation of" HHSC's final order. The State filed a plea to the jurisdiction asserting sovereign immunity. The district court denied the plea to the jurisdiction and issued a judgment and writ of mandamus commanding Janek and Wilson to immediately take all necessary action "to release to [the Dental Group] the sum of $1,255,195.20, which represents 91% of the $1,379,335.43 improperly sequestered as a result of the payment hold" through January 7, 2013. The State perfected this appeal.

## ANALYSIS

### *Standard of Review*

"A writ of mandamus will issue to compel a public official to perform a ministerial act. An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991); *see also Community Health Choice, Inc. v. Hawkins*, 328 S.W.3d 10, 13 (Tex. App.—Austin 2010, pet. denied). If an action involves personal deliberation, decision, and judgment, it is discretionary; actions that require obedience to orders or the performance of a duty to which the actor has no choice are ministerial. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994).

> [S]uits to require state officials to comply with statutory or constitutional provisions
> are not prohibited by sovereign immunity, even if a declaration to that effect compels

5

the payment of money. To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.

*City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

### *The Administrative Order*

The dispositive issue in this appeal is whether the administrative order adopted and issued by HHSC, read in conjunction with applicable statutes and regulations, unambiguously required that funds sequestered and held pursuant to the temporary payment hold be released to the Dental Group. The ALJ's PFD included the following findings of fact and conclusions of law:

FOF 35: There is no evidence that is credible, reliable, or verifying, or that has indicia of reliability, that [the Dental Group] committed fraud or misrepresentation.

COL 9: HHSC may impose a hold on payment of future claims submitted by a provider if there is reliable evidence that the provider has committed fraud or willful misrepresentation regarding a claim for reimbursement under the medical assistance program. Tex. Hum. Res. Code § 32.0291(b). In a SOAH hearing on a payment hold, HHSC must make a prima facie showing that the evidence relied on in imposing the hold is relevant, credible, and material to the issue of fraud or willful misrepresentation. Tex. Hum. Res. Code § 32.0291(c).

COL 10: HHSC-OIG lacks authority to maintain the payment hold against [the Dental Group] for alleged fraud or misrepresentation. Tex. Gov't Code § 531.102(g)(2); 42 C.F.R. § 455.23; Tex. Hum. Res. Code § 32.0291(c); 1 Tex. Admin. Code §§ 371.1703(b)(3) and (5), 317.1617(a)(1)(A)-(C).

6

In its final order, HHSC adopted the ALJ's findings and conclusions in their entirety. Thus, HHSC's final order plainly states that no prima facie showing was made that there was relevant, credible, or reliable evidence to justify a payment hold based on the Dental Group's having committed fraud or willful misrepresentation. The order also concludes that HHSC and the OIG lacked the authority to maintain a payment hold on the Dental Group's Medicaid reimbursement funds on that basis.

The ALJ did find, however, that there was prima facie evidence that, as to approximately 9% of the cases reviewed, the Dental Group billed or caused claims to be submitted for services or items that were not reimbursable by the Medicaid program, failed to comply with the terms of the Medicaid program provider agreement, or failed to comply with a Medicaid program procedure manual. Relying on an administrative rule adopted by HHSC that permitted a payment hold under those circumstances, the ALJ made the following conclusion of law:

> COL 11: HHSC-OIG has authority to maintain a payment hold against [the Dental Group] based on prima facie evidence of: billing or causing claims to be submitted to the Medicaid program for services or items that are not reimbursable by the Medicaid program; failing to comply with the terms of the Medicaid program provider agreement; and failing to comply with a Medicaid program procedure manual. 1 Tex. Admin. Code §§ 371.1703(b)(5), 371.1617(1)(K), (5)(A) and (G).[2]

---

[2] In a separate appeal, the Dental Group challenges HHSC's authority to make a rule that permits a payment hold under these circumstances. *See* No. 03-14-00069-CV. In the present appeal, however, the Dental Group does not assert that mandamus is an available remedy to obtain the release of the remaining 9% of the Medicaid reimbursements for orthodontia that the ALJ found HHSC had authority to withhold. Nothing in this opinion should be construed as a comment on the Dental Group's separate rule challenge.

Thus, while the ALJ found that HHSC and the OIG did not have authority to impose a payment hold as to 100% of the Dental Group's Medicaid reimbursements for orthodontia services based on fraud or willful misrepresentation, she did conclude that they were authorized to continue to impose a hold on 9% of such reimbursements based on its finding of billings that, though not fraudulent, were not in compliance with the terms of the Medicaid program provider agreement or program procedure manual or were for non-reimbursable services. Consequently, HHSC's final order concludes with the following:

> It is, therefore, ordered by the Texas Health and Human Services Commission that the action imposing a payment hold on [the Dental Group] be sustained in part and be reversed in part, and that **the payment hold against [the Dental Group] be reduced to 9 percent** of [the Dental Group's] total Medicaid reimbursement that is related to orthodontics . . . .

(Emphasis added.)

The State argues that the foregoing terms in the order do not actually direct HHSC and OIG to release—i.e., pay—to the Dental Group the 91% of Medicaid reimbursements found to have been improperly withheld but that were already in HHSC's possession. Instead, the State contends the order is prospective only and simply directs HHSC and OIG, going forward, to withhold funds at the lower level of 9% of the Dental Group's Medicaid reimbursements for orthodontia services instead of the 100% payment hold initially imposed.

### The Statute and Regulations

Regarding the duration of any payment hold, former Human Resources Code section 32.0291(c) provided as follows:

On timely written request by a provider subject to a postpayment hold under Subsection (b), the department shall file a request with the State Office of Administrative Hearings for an expedited administrative hearing regarding the hold. The provider must request an expedited hearing under this subsection not later than the 10th day after the date the provider receives notice from the department under Subsection (b). ***The department [HHSC] shall discontinue the hold unless the department makes a prima facie showing at the hearing that the evidence relied on by the department in imposing the hold is relevant, credible, and material to the issue of fraud or wilful misrepresentation.***

Former Tex. Human Res. Code § 32.0291(c) (emphasis added). In addition, former section 531.102(g)(2) of the Government Code required that a hold placed by the OIG would be imposed "in accordance with 42 C.F.R. Section 455.23." The referenced section of the Code of Federal Regulations provides that "[a]ll suspension of payment actions under this section will be temporary and will not continue after either of the following: (i) The agency or the prosecuting authorities determine that there is insufficient evidence of fraud by the provider, (ii) Legal proceedings related to the provider's alleged fraud are completed." 42 C.F.R. § 455.23.

Thus, under both the Texas statute and the applicable federal regulation, any payment hold was temporary and had to end if credible evidence of fraud was found to be lacking. Here, the ALJ found that HHSC failed to make a prima facie showing of any right to withhold payment based on fraud or willful misrepresentation. The ALJ concluded that HHSC therefore lacked authority to withhold funds on that basis. HHSC adopted all of the ALJ's findings and conclusions.

Read in conjunction with the statutes setting forth the grounds for imposing a payment hold and the evidentiary burden required to maintain such a hold, the necessary and logical import of the HHSC's order to "reduce" the hold to 9% of the previously designated amount is that 91% of the hold was lifted or discontinued. The State's right to temporarily possess any of these

funds was based solely on the existence of credible evidence of fraud. Thus, a finding of the absence

of such evidence could only mean that the State's right to temporary possession of the funds no

longer existed. In the present context, the only reasonable interpretation is that the 91%

"discontinuation" of the State's right to temporary possession referred not only to funds that might

be subject to a hold in the future but also to funds that were on hand by reason of the earlier hold.

To say that HHSC could continue to maintain possession of the previously held funds even though

the temporary hold had been discontinued is not a reasonable reading of the statute.

We also disagree with the State's argument that this suit constitutes a "retrospective

claim for monetary relief" and is therefore barred by sovereign immunity. *See Heinrich*, 284 S.W.3d

at 374 (retrospective monetary claims are generally barred by immunity). The Dental Group sought

only to enforce the agency's existing order that imposed on Janek and Wilson the ministerial duty

to release a portion of the funds subject to the payment hold. Such relief is prospective in nature and

simply requires that, going forward, and in accordance with its own order, the State may no longer

continue to impound the funds it began holding when it claimed to have credible evidence of fraud

or wilful misrepresentation by a Medicaid provider.[3]

---

[3] We also note that the relief sought by the Dental Group would not determine any final rights of the parties. Texas and federal law permit the temporary hold of Medicaid payments while allegations of fraud are being investigated and litigated. *See* Tex. Gov't Code § 531.102(g)(2); Former Tex. Human Res. Code § 32.0291(b); 42 C.F.R. § 455.23. Thus, this payment hold is a form of statutory sequestration: "Sequestration = the removal, by judicial authority, of real or personal property from its possessor, usu. to preserve it until a court has determined who has a right to it." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 795 (2d ed. 1995). Accordingly, the outcome of this case will not determine any final rights of the parties but only which party will maintain temporary possession of the funds in question while the final rights to them are being adjudicated in a separate proceeding.

The parties do not dispute that as of the date of the final order—January 7, 2013—the total amount of the Dental Group's Medicaid reimbursements that had been withheld was $1,379,335.43. The ALJ's findings and conclusions, which were incorporated into the final order, read together with the order, dictate that HHSC and the OIG lacked the authority to continue to hold 91% of that amount. Necessarily flowing from that finding and conclusion is that $1,255,195.20 of the withheld funds were to be released to the Dental Group. Because the State officials have refused to perform this ministerial duty at the Dental Group's request, the district court correctly issued a writ of mandamus directing them to comply with the final order and take all necessary action to release to the Dental Group the sum of $1,255,195.20.

**CONCLUSION**

For the reasons stated above, we affirm the district court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: October 30, 2014

11