# NO. 12-21-00143-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TRAVELERS INDEMNITY COMPANY, APPELLANT* | *§* | *APPEAL FROM THE 369TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *ALTO ISD, APPELLEE* | *§* | *CHEROKEE COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Travelers Indemnity Company ("Travelers") appeals the trial court's denial of its motion to dismiss Alto Independent School District's ("Alto ISD") claims against it or stay the litigation in favor of arbitration. We affirm.

## BACKGROUND

Alto ISD obtained property insurance coverage from Texas Rural Education Association Risk Management Cooperative ("TREA") for the period of September 1, 2018 through September 1, 2019. The coverage declarations document ("Policy") contains no arbitration clause. TREA subsequently formed a contract ("Reinsurance Contract") with Travelers to reinsure part of TREA's liability to Alto ISD. The Reinsurance Contract provides a reinsurance limit of $200,000,000.00 and a company retention of $500,000.00 per occurrence. It contains the following arbitration clause:

> As a condition precedent to any right of action hereunder, any dispute between the COMPANY and the REINSURER arising out of, or relating to the formation, interpretation, performance or breach of this CERTIFICATE, whether such dispute arises before or after termination of this CERTIFICATE, shall be submitted to arbitration.

In the Reinsurance Contract, "company" means TREA, and "reinsurer" means Travelers.

1

Alto ISD sued TREA and Travelers based on a dispute over the settlement of its claim for damage sustained in a hailstorm on April 6, 2019 and a tornado on April 13. In its original petition, Alto ISD minimally differentiated between TREA and Travelers in its factual allegations and claims. In its answer to Alto ISD's original petition, Travelers asserted various defenses to the claims, including that Alto ISD's claims were barred because Travelers is not a party to the insurance contract between Alto ISD and TREA and Alto ISD is not a party to the Reinsurance Contract. Additionally, it asserted that Alto ISD's claims are subject to the Reinsurance Certificate's arbitration clause to the extent that they assert a right of recovery under the Reinsurance Certificate.

In Alto ISD's third amended petition, the live petition, Alto ISD alleges that TREA sold it the Policy, and Alto ISD submitted its claim to TREA. Travelers adjusted the claim and determined that the replacement costs of the covered damage were $3,398,917.78 and $2,555,179.99, respectively. Alto ISD retained Loss Recovery Group (LRG) to prepare a damage estimate. LRG determined that the total damage amount was $14,798,722.00. Alto ISD received $6,516,697.00 from Travelers and none from TREA. However, in its "Fraud" section, Alto ISD specifies that "Travelers tendered [Alto ISD's] claim funds to TREA for payment, which TREA then held." The record is silent regarding how Alto ISD received the money. It requested additional funds "through LRG," but TREA and Travelers declined to respond. Travelers's adjusters told Alto ISD and LRG that certain items such as building contents were covered and payments would be made, but they were not.

In the petition, Alto ISD asserts claims for breach of contract, breach of the common law duty of good faith and fair dealing, and violation of the Texas Prompt Payment of Claims Act against only TREA. Against TREA and Travelers, Alto ISD asserts claims for common law fraud, conspiracy to commit fraud, misrepresentation, and violation of the Texas Unfair Compensation and Unfair Practices Act and the Texas Deceptive Trade Practices Act (DTPA). Additionally, Alto ISD asserts a negligence claim against only Travelers.

In its written motion to dismiss Alto ISD's claims against it or stay the litigation in favor of arbitration, Travelers argued that Alto ISD's claims against it "necessarily arise out of or relate to the Reinsurance Certificate," and therefore, under the Reinsurance Contract's arbitration provision, must be submitted to arbitration. Travelers further argued that although Alto ISD is not a party to the Reinsurance Contract, it must be compelled to arbitrate its claims under the

doctrine of direct benefits estoppel because it seeks direct benefits from the Reinsurance Contract through the lawsuit.

At a hearing on Travelers's motion, Travelers explained that it was not seeking by way of the motion a dismissal on the merits of Alto's claims, but rather a stay of the proceedings as provided for under the Federal Arbitration Act (FAA)[1] or a dismissal pending the resolution of the substantive merits through arbitration. It maintained its argument that Alto ISD must be compelled to arbitrate the claims because it is seeking through the lawsuit direct benefits of the Reinsurance Contract. In response, Alto ISD argued that it should not be compelled to arbitrate its claims because it is not a party to the Reinsurance Contract, and direct benefits estoppel does not apply because the sources of its claims are the insurance code, the DTPA, and common law negligence, fraud, and misrepresentation, not the Reinsurance Contract. The trial court denied Travelers's motion to dismiss or stay the litigation. This appeal followed.

## DENIAL OF MOTION TO DISMISS OR STAY

In Travelers's sole issue, it contends that the trial court erred by denying its motion to dismiss or stay the litigation in favor of arbitration. Specifically, Travelers argues that Alto ISD's claims against it are subject to the Reinsurance Contract's arbitration clause because direct benefits estoppel applies and the claims "arise out of and relate to the Reinsurance Contract."

### Standard of Review and Applicable Law

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id.* Determining whether a claim involving a nonsignatory must be arbitrated is a gateway matter for the trial court, which means the determination is reviewed de novo. *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 629 (Tex. 2018).

No party may be compelled to arbitrate unless they have agreed to arbitrate or are bound by principles of agency or contract law to do so. *Id.* at 640. Whether a party is bound by an arbitration agreement is normally a function of the parties' intent as expressed in the agreement's terms. *Id.* at 633. Additionally, courts have articulated six scenarios in which arbitration with

---

[1] The Reinsurance Contract states that Travelers is located in Connecticut and TREA is located in Texas. Thus, the parties agree, as do we, that the Reinsurance Contract relates to interstate commerce and is subject to the FAA. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001).

nonsignatories may by required: (1) incorporation by reference, (2) assumption, (3), agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Id.* When relying on a contract to compel arbitration, the moving party must first establish the existence of a valid and enforceable arbitration agreement. *Id.* Within this element is the question of whether the arbitration agreement is valid and enforceable against a nonsignatory. *See id.* Second, the claims at issue must fall within the arbitration agreement's scope. *Id.*

The Texas Supreme Court has recognized direct benefits estoppel as a type of equitable estoppel that may be used to compel arbitration. *Id.* at 636. Direct benefits estoppel applies to parties who seek to derive a direct benefit from a contract with an arbitration agreement. *Id.* at 637. A nonsignatory may be compelled to arbitrate if it (1) seeks to derive a direct benefit from the contract through the lawsuit or (2) deliberately seeks and obtains substantial direct benefits from the contract itself. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131-32 (Tex. 2005). When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability arises solely from the contract or must be determined by reference to it—equity prevents a person from avoiding the arbitration clause that was part of that agreement. *Jody James Farms*, 547 S.W.3d at 637. However, when the substance of the claim arises from general obligations imposed by state law, including statutes, torts, and other common law duties, or federal law, direct benefits estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen but for the contract's existence. *Id.*

## Analysis

In its brief, Travelers asserts that "a nonsignatory to a contract that provides disputes arising out of or relating to the performance or breach of the contract can be bound by the arbitration provision when (1) it directly seeks benefits under the contract *or* (2) brings claims that arise out of or relate to the contract." Based on this purported statement of the law, Travelers argues that the trial court erred by denying its motion because "[t]hrough this suit, Alto both directly seek [sic] benefits (insurance payments) under the Reinsurance Contract and asserts causes of action that arise out of and relate to the Reinsurance Contract." We address each contention in turn.

### *Direct Benefits Estoppel*

In support of its argument that Alto ISD is bound by the arbitration provision under direct benefits estoppel, Travelers avers that "Alto's live petition is replete with allegations seeking

4

additional insurance funds from Travelers, which, if owed, would necessarily arise from a payment obligation under the Reinsurance Contract" and lists the following examples:

> [1] "The damage to Plaintiff's property *for which it made claims to Defendants for insurance proceeds* was incurred in Cherokee County, Texas as a result of a [sic] hail and windstorms that traveled through Cherokee County, Texas." [record citations omitted]
>
> [2] "To date, *Alto ISD has received $6,516,697 from Defendant Travelers*." []
>
> [3] "To date, Alto ISD has received $0 from Defendant TREA despite Defendant TREA owing Plaintiff the *initial payment of the claim*." []
>
> [4] "Alto ISD has not received *additional funds from* TREA and *Travelers*." []
>
> [5] "Defendant Travelers adjuster represented to [Alto] and [Alto's] adjuster's [sic] LRG that certain items, such as the school district[']s contents, would be covered and *payments would be made*, but the *payments were never made*." []
>
> [6] "Defendants TREA and Travelers wrongfully denied and limited [Alto's] claims for repairs even though *the Policy provided coverage for losses* such as those suffered by [Alto]." []
>
> [7] Defendants TREA and *Travelers . . . fail[ed] to attempt in good faith to effectuate a prompt, fair, and equitable* **settlement of the claims**, *even though* Defendants TREA and *Travelers liability under the policy was reasonably clear . . .*" []
>
> [8] "Defendants TREA and *Travelers . . . refused to pay [Alto's] claims* without conducting a reasonable investigation . . ." []
>
> [9] "[Alto] has been damaged as a result of Defendants TREA and Travelers deceptive trade practices *in an amount equal to the costs of repairs . . .*" []
>
> [10] "[Alto] is entitled to actual damages, which includes the *loss of the benefits* that should have been paid pursuant to the policy . . ." []

In response, Alto ISD argues that direct benefits estoppel does not apply because Alto ISD does not seek through the lawsuit benefits—direct or indirect—under the Reinsurance Contract. It asserts claims for statutory and common law torts committed by Travelers in its role as an adjuster of the insurance claims brought under the Policy, not a claim for breach of the Reinsurance Contract. The damages it seeks are not insurance payments under the Reinsurance Contract but tort damages available under Texas law.

Travelers does not explain how the petition excerpts constitute "allegations seeking additional insurance funds from Travelers, which, if owed, would necessarily arise from a payment obligation under the Reinsurance Contract," and we disagree with that characterization. None of the excerpts mention the Reinsurance Contract, but liability, coverage, and benefits under "the policy" is mentioned. Furthermore, the allegations seek damages from Travelers

based on tort, DTPA, and insurance code duties, not insurance funds under the Reinsurance Contract. *See Jody James Farms*, 547 S.W.3d at 638.

In *Jody James Farms*, Jody James Farms purchased a crop insurance policy with an arbitration provision from Rain & Hail, LLC, through the Altman Group, an independent insurance agency. *Id.* at 629. When Jody James Farms claimed coverage for a crop loss, Rain & Hail denied the claim based in part on its untimely notice. *Id.* at 629-30. Jody James Farms, after losing to Rain & Hail in arbitration, filed tort and DTPA claims against the Altman Group for failing to timely submit its claim to Rain & Hail. *Id.* at 630. The Altman Group moved to compel arbitration of the matter, contending in part that Jody James Farms was bound under the insurance policy's arbitration provision under a theory of direct benefits estoppel. *Id.* at 630, 636. The Texas Supreme Court held that direct benefits estoppel did not apply because, similarly to the complaint in this case, Jody James's complaint premised the Altman Group's liability on tort and DTPA duties that are general, noncontract obligations. *Id.* at 638; *see also 5556 Gasmer Management LLC v. Underwriters at Lloyd's, London*, 463 F.Supp.3d 785, 793-94 (S.D. Tex. 2020).[2]

The supreme court further observed that the case was not one of "mere artful pleading." *Jody James Farms*, 547 S.W.3d at 638. Because the insurance policy did not impose any duties or obligations on the Altman Group, Jody James would be unable to maintain a contract claim against it under the insurance policy even if it were inclined to do so. *Id.* at 639. Therefore, instead of enforcing expectations created by contract, any liability was necessarily extracontractual. *Id.* Accordingly, direct benefits estoppel was not shown. *Id.*

Similarly, Alto ISD's complaint premises Travelers's liability on tort, DTPA, and insurance code duties that are general, noncontract obligations. *See id.* at 638; *5556 Gasmer*, 463 F.Supp.3d at 793-94. Furthermore, like *Jody James Farms*, this is not a case of mere artful pleading. Alto ISD has no rights under the Reinsurance Contract. Without contractually mandated rights, Alto ISD would be unable to maintain a contract claim against Travelers under the Reinsurance Contract even if it were inclined to do so. *See Jody James Farms*, 547 S.W.3d

---

[2] The court in *5556 Gasmer* similarly held that direct benefits estoppel did not apply when a nonsignatory sought to hold insurance broker defendants liable in tort according to theories available under the Texas Insurance Code rather than pursuant to duties imposed by the insurance policy. *5556 Gasmer Management LLC v. Underwriters at Lloyd's, London,* 463 F.Supp.3d 785, 793-94 (S.D. Tex. 2020).

at 638-39; *see also **Community Health Choice, Inc. v. Hawkins***, 328 S.W.3d 10, 18 (Tex. App.—Austin 2010, pet. denied) (A "contract claim" is "simply an assertion of an existing right to payment under a contract."). Therefore, instead of enforcing expectations created by the Reinsurance Contract, any liability of Travelers is necessarily extracontractual, and direct benefits estoppel is not shown. *See **id.***

Travelers argues that Alto ISD's claims are "of the same character" as the plaintiff's in *Weekley*, quoting the following sentence from that case:

> [O]nce Von Bargen deliberately sought substantial and direct benefits from the contract, and Weekley agreed to comply, equity prevents [Von Bargen] from avoiding the arbitration clause that was part of that agreement.

*Weekley*, 180 S.W.3d at 134. Citing *Weekley*, Travelers observes that "[i]t is immaterial that the arbitration provision [in this case] does not expressly state that a non-signatory like Alto must arbitrate" because "Texas courts have regularly enforced [arbitration provisions that discuss arbitration between the signatories] against nonsignatories like Alto under the 'direct benefits' doctrine." We agree that under *Weekley* and other cases, such arbitration provisions may be enforced against a nonsignatory under direct benefits estoppel in the appropriate case. *See, e.g.*, *id.* at 131; *Jody James Farms*, 547 S.W.3d at 637. However, this is not the appropriate case, and the circumstances here are distinguishable from those in *Weekley*.

In *Weekley*, a man contracted with a construction company for the construction of a home for himself and his daughter's (Von Bargen's) family. *Weekley*, 180 S.W.3d at 129. The man subsequently filed claims including breach of contract against the construction company, and Von Bargen filed a personal injury claim against the company based on asthma allegedly caused by negligent house repairs. *Id.* The Texas Supreme Court held that direct benefits estoppel applied to bind Von Bargen by the construction contract's broadly worded arbitration provision, not because she was seeking to derive a direct benefit from the contract through the lawsuit, but because she sought and obtained substantial benefits of the contract prior to the litigation by, under claim of authority of the purchase agreement, directing construction and repairs of the house, requesting and receiving reimbursement for repairs to the house, and conducting settlement negotiations about moving the family to a new home. *Id.* at 133.

In contrast, Travelers alleges only that Alto ISD is seeking benefits of the Reinsurance Contract through its claims in the lawsuit, not that it sought and obtained substantial benefits of

the contract apart from the litigation. Moreover, even if it made such an allegation, the record does not support it. Alto ISD states in its petition that it "received $6,516,697 from Defendant Travelers." This statement could be construed as showing that Alto ISD received a benefit of the Reinsurance Contract. However, to invoke direct benefits estoppel based on a nonsignatory's actions apart from the litigation, a party must show that the nonsignatory "deliberately s[ought] and obtain[ed] substantial benefits from the contract[.]" *See id.* We find no indication in the record that, prior to receiving the $6,516,697.00, Alto ISD sought benefits from the Reinsurance Contract rather than the Policy.

Because Travelers has not shown or even argued that Alto ISD sought and obtained substantial benefits of the contract apart from the litigation, its comparison of the circumstances in this case to those in *Weekley* is inapt. Even if Alto ISD's claims fall within the arbitration provision's scope as the daughter's tort claim did in *Weekley*,[3] Alto ISD cannot be compelled to arbitrate under the provision as in *Weekley*, because Travelers has not shown either that Alto ISD seeks direct benefits of the Reinsurance Contract through its claims or that it sought and obtained substantial benefits of the contract apart from the litigation. *See id.* at 131-32; ***Jody James Farms***, 547 S.W.3d at 633.

Travelers further compares the circumstances of this case to those in ***Ace American Ins. Co. v. Huntsman Corp.***, 255 F.R.D. 179 (S.D. Tex. 2008). However, like the construction company in *Weekley*, the plaintiffs in *Ace* alleged that nonsignatories sought benefits from the contract, not through a lawsuit as alleged here, but apart from any litigation. *Ace*, 255 F.R.D. at 206. Travelers seems to acknowledge this distinction, but instead of attempting to show that Alto ISD sought substantial direct benefits from the contract apart from the litigation, it contends that Alto ISD "has gone beyond the conduct of the insured in [*Ace*]—it has actually sued Travelers for benefits under the Reinsurance Contract." This contention lacks merit because, as we concluded above, Travelers has not shown that Alto ISD seeks benefits under the Reinsurance Contract through the lawsuit.

The cases to which Travelers compares this case are inapposite. The petition excerpts it cites as evidence that Alto ISD is seeking insurance funds from Travelers, especially when taken in context of the petition as a whole, show that Alto ISD alleges it was damaged by receiving an inappropriate settlement for its claims under the Policy—not the Reinsurance Contract, and that

---

[3] We express no opinion regarding this question.

Travelers's liability, if any, is premised on insurance code, tort, and DTPA duties that are general, noncontract obligations arising from its role as the adjuster of the claims under the Policy—not the reinsurer of TREA's liability under the Reinsurance Contract. Accordingly, we conclude Travelers has not carried its burden of establishing that direct benefits estoppel applies in this case. *See **Jody James Farms***, 547 S.W.3d at 633; ***5556 Gasmer***, 463 F.Supp.3d at 793-94.

*Causes of Action Arise out of and Relate to the Reinsurance Contract*

Travelers argues that

> [a]lthough there is no contractual agreement between Alto and Travelers, Alto is nevertheless subject to the arbitration provision in the Reinsurance Contract. This is so because Alto's claims necessarily arise out of or relate to the Reinsurance Contract. Stated differently: absent the existence of the Reinsurance Contract, Alto has no potential claim against Travelers.

The authorities cited by Travelers in this section of its brief do not support its proposition that a nonsignatory is bound by an arbitration provision whenever its claims "arise out of or relate to" the contract. Although a nonsignatory may be bound under a direct estoppel theory when "the alleged liability arises solely from the contract," we decided above that the alleged liability here does not arise from the Reinsurance Contract. *See **Jody James Farms***, 547 S.W.3d at 637.

As Travelers observes, the arbitration provision states that "any dispute between [TREA] and [Travelers] arising out of, or relating to the formation, interpretation, performance of breach of [the Reinsurance Contract] . . . shall be submitted to arbitration." Thus, whether Alto ISD's claims "arise out of or relate to" the contract is relevant to the question of the arbitration provision's scope. However, we need not address this question because Travelers has not shown that the arbitration provision is valid and enforceable against Alto ISD. *See* TEX. R. APP. P. 47.1 (court of appeals opinion must be as brief as practicable and need address only issues necessary to final disposition of appeal); *see also **Jody James Farms***, 547 S.W.3d at 633.

*Conclusion*

Because Travelers has not shown that the arbitration provision is valid and enforceable against Alto ISD under either of its theories, we conclude that the trial court did not abuse its discretion by denying Travelers's motion to dismiss or stay the litigation. *See **Jody James Farms***, 547 S.W.3d at 633. Accordingly, we overrule Travelers's sole issue.

## DISPOSITION

Having overruled Travelers's sole issue, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered May 25, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 25, 2022**

**NO. 12-21-00143-CV**

**TRAVELERS INDEMNITY COMPANY,**
Appellant
V.
**ALTO ISD,**
Appellee

Appeal from the 369th District Court

of Cherokee County, Texas (Tr.Ct.No. 2020030062)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are assessed against the Appellant, **TRAVELERS INDEMNITY COMPANY**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*