ACCEPTED
03-15-00252-CV
5754360
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/19/2015 4:04:25 PM
JEFFREY D. KYLE
CLERK

**NO. 03-15-00252-CV**

**In the
Third Court of Appeals
Of Texas**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/19/2015 4:04:25 PM
~~JEFFREY D. KYLE~~
Clerk

DR. BEHZAD NAZARI, D.D.S., ET AL

*Appellants*,

v.

THE STATE OF TEXAS

*Appellees,*

v.

ACS STATE HEALTHCARE, LLC

*Appellees.*

On appeal from the 53rd District Court, Travis County, Texas
Cause No. NO. D-1-GV-14-005380

APPELLANTS' BRIEF ON THE MERITS

Jason Ray
State Bar No. 24000511
RIGGS & RAY, P.C.
700 Lavaca Street, Suite 920
Austin, Texas 78701
Telephone: (512) 457-9806
Telecopier: (512) 457-9066
*jray@r-alaw.com*

E. Hart Green
Texas Bar No. 08349290
WELLER, GREEN, TOUPS & TERRELL, L.L.P.
Post Office Box 350
Beaumont, Texas 77704-0350
Telephone: (409) 838-0101
Telecopier: (409) 832-8577
*hartgr@wgttlaw.com*

*Attorneys for Appellants Dr. Behzad Nazari, D.D.S., et al*

Oral Argument Requested

# IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellants:** | Dr. Behzad Nazari, D.D.S. d/b/a Antoine Dental Center, Dr. Behzad Nazari, Harlingen Family Dentistry, P.C. a/k/a Practical Business Solutions, Series LLC, Juan D. Villarreal D.D.S., Series PLLC d/b/a Harlingen Family Dentistry Group, Dr. Juan Villarreal, Richard F. Herrscher, D.D.S., M.S.D., P.C., Dr. Richard F. Herrscher, M & M Orthodontics, PA, Dr. Scott Malone, Dr. Diana Malone, Michelle Smith, National Orthodontix, Mgmt., PLLC, Dr. John Vondrak, RGV Smiles by Rocky Salinas, D.D.S. PA, and Dr. Rocky Salinas (hereinafter "Dental Group") |

**Counsel for Appellant:**

Jason Ray
State Bar No. 24000511
RIGGS & RAY, P.C.
700 Lavaca Street, Suite 920
Austin, Texas 78701
Telephone: (512) 457-9806
Facsimile: (512) 457-9066
*jray@r-alaw.com*

E. Hart Green
Texas Bar No. 08349290
Mitchell A. Toups
WELLER, GREEN, TOUPS & TERRELL, L.L.P.
Post Office Box 350
Beaumont, Texas 77704-0350
Telephone: (409) 838-0101
Telecopier: (409) 832-8577
*hartgr@wgttlaw.com*
*matoups@wgttlaw.com*

**Appellees:** The State of Texas; and ACS State Healthcare, LLC

**Counsel for State:** Raymond Winter

State Bar No. 21791950
Chief, Civil Medicaid Fraud Division
Office of the Attorney General

Reynolds B. Brissenden
Office of the Attorney General

P.O. Box 12548
Austin, Texas  78711-2548
Telephone: (512) 936-1709
Facsimile: (512) 499-0712
*raymond.winter@texasattorneygeneral.gov*
*reynolds.brissenden@texasattorneygeneral.gov*

**Counsel for the ACS:**          Robert C. Walters
State Bar No. 2820300
Gibson Dunn & Crutcher, LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
*RWalters@gibsondunn.com*

Eric J. R. Nichols
State Bar No. 14994500
Beck Redden, LLP
515 Congress Avenue, Suite 1900
Austin, Texas  78701
Telephone: (512) 708-1000
Facsimile: (512) 708-1002
*enichols@beckredden.com*

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ ii
TABLE OF CONTENTS ....................................................................................iv
TABLE OF AUTHORITIES ................................................................................vi
STATEMENT OF THE CASE...............................................................................x
STATEMENT OF JURISDICTION......................................................................xi
RECORD REFERENCES ....................................................................................xi
ISSUES PRESENTED........................................................................................ xii
STATEMENT OF FACTS ....................................................................................1
SUMMARY OF ARGUMENT ............................................................................5
ARGUMENT ........................................................................................................8

    **Issue 1.**    Did the trial court err in dismissing the Dental Group's
                     counterclaims against the State? ..................................................6

        A. The State initiated this case seeking monetary relief against the
        Dental Group, invoking the waiver of immunity rule set out in
        *Reata v. City of Dallas.* ..............................................................8

        B. The counterclaims are compulsory and/or inextricably
        intertwined with the State's TMFPA claims........................................9

            B.1. The counterclaims are compulsory counterclaims.............11
            B.2. The counterclaims would rebut the State's claims............12
            B.3. The counterclaims share a common core of facts.............16

        C.     Counterclaims and third party claims are common in
        Federal False Claims Act cases, and those federal cases
        provide strong logic and persuasive authority for adopting the
        Federal approach to allowing such claims. ........................................17

            C.1. FCA counterclaims permit defendants
            to prove government liability and damages, but only up
            to the level necessary to offset the government's
            monetary recovery (just like *Reata*)........................................18
            C.2. What type of counterclaims are proper? Any
            claim that does not depend on finding the defendants
            liable.............................................................................20
            C.3. The Dental Groups' counterclaims and third

-party claims are independent claims........................................21

D. None of the State's bases for asserting a lack of jurisdiction are
applicable.......................................................................................23

      D.1. A Medicaid Fraud case is still a fraud case; that is,
a tort action.............................................................................23
D.2. Counterclaims do not have to mirror the State's
cause of action.........................................................................24
D.3. The Dental Group has not asserted the affirmative
defense of estoppel, but it could rightfully do so later,
especially based on these facts.................................................25
D.4.  The statute does not have to expressly waive sovereign
immunity, waiver by action will suffice in this case. ...............27
D.5. Standing is not really a jurisdictional question, so a
plea to the jurisdiction is improper to resolve the State's ........28

Issue 2.  Did the trial court err in dismissing the Dental Group's
third  party claims against Xerox, since:..........................................29

A. The arguments and logic regarding the Dental Group's
counterclaims is equally applicable to third party claims. ..................29

B.  In any event, the Dental Group's claims should have been
severed, not dismissed. .....................................................................32

CONCLUSION     .................................................................................32
PRAYER     ..........................................................................................33
CERTIFICATE OF COMPLIANCE.....................................................35
CERTIFICATE OF SERVICE ..............................................................36
APPENDIX

# TABLE OF AUTHORITIES

## CASES

*Anderson, Clayton & Co. v. State ex rel. Allred,*
122 Tex. 530, 537, 62 S.W.2d 107, 110 (Comm'n App. 1933)......................8

*Cell Therapeutics, Inc. v. Lash Grp., Inc.,*
586 F.3d 1204, 1213 (9th Cir. 2009)............................................................20

*City of Austin v. Garza,*
124 S.W.3d 867, 875 (Tex. App.—Austin 2003, no pet.)............................26

*City of Dallas v. Albert,*
354 S.W.3d 368 (Tex. 2011) ......................................................................13

*City of Fredericksburg v. Bopp,*
126 S.W.3d 218 (Tex. App.—San Antonio 2003, no pet.) .........................26

*City of Galveston v. State, 217 S.W.3d 466, 472 (Tex. 2007)*.................................27

*City of Hutchins v. Prasifka,*
450 S.W.2d 829, 835-36 (Tex. 1970 ..........................................................27

*City of New Braunfels v. Carowest Land, Ltd.,*
432 S.W.3d 501, 524 (Tex.App.—Austin 2014, no pet.).........11,12,16,17,24

*City of San Antonio v. Schautteet,*
706 S.W.2d 103, 105 (Tex. 1986) ..............................................................26

*City of White Settlement v. Super Wash, Inc.,*
198 S.W.3d 770 (Tex. 2006) .......................................................................26

*Dillard v. Tex. Elec. Coop.,*
157 S.W.3d 429, 430 (Tex.2005) ................................................................12

*Harlingen Family Dentistry, P.C. v. Texas Health & Human Services Comm'n,*
452 S.W.3d 479 (Tex. App.—Austin 2014, pet. filed) ................................5

*Harris Cnty. v. Luna–Prudencio,*
      294 S.W.3d 690, 697 (Tex.App.-Houston [1st Dist.] 2009, no pet...............11

*Heartland Holdings, Inc. v. U.S. Trust Co. of Texas N.A.,*
      316 S.W.3d 1, 7 (Tex.App.—Houston [14[th] Dist] 2010, no pet) ................29

*Janek v. Harlingen Family Dentistry,*
      *P.C.*, 451 S.W.3d 97 (Tex. App.—Austin 2014, no pet.).........................5,22

*MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.,*
      995 S.W.2d 647, 650–54 (Tex.1999), et al.) ...............................................29

*Reata Const. Corp. v. City of Dallas,*
      197 S.W.3d 371 (Tex. 2006) ...............................7,8,18,23,24,27,28

*Roberts v. Haltom City,*
      543 S.W.2d 75 (Tex. 1976) ........................................................................26

*Rothensies v. Elec. Storage Battery Co.,*
      329 U.S. 296, 299, 67 S.Ct. 271, 91 L.Ed. 296 (1946) ...............................19

*State v. Zanco's Heirs, 18 Tex. Civ. App.*
      127, 129, 44 S.W. 527, 529 (1898), writ refused ...........................................8

*Sweeny Cmty. Hosp. v. Mendez,*
      226 S.W.3d 584, 592 (Tex.App.—Houston [1[st] Dist.] 2007 ....................12,25

*Texas v. Caremark, Inc.,*
      584 F.3d 655, 659 (5th Cir. 2009) .............................................................18

*The State of Texas v. Xerox Corporation; Xerox State Healthcare,*
*LLC; ACS State Healthcare, LLC, a Xerox Corporation,*
      in the 53rd Judicial District Travis County,
      Cause No. D-1-GV-14-000581........................................................................2

*United States v. Agnew,*
      423 F.2d 513, 514 (9th Cir.1970 .................................................................19

*United States v. Campbell,*
      No. CIV.A. 08-1951, 2011 WL 43013, at *11 (D.N.J. Jan. 4, 2011)...19,20,29

*United States v. Dalm*,
  494 U.S. 596, 611, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) .......................19

*United States v. Intrados/Int'l Mgmt. Grp.*,
  277 F. Supp. 2d 55, 62 (D.D.C. 2003)..........................................................19

*United States v. Nardone,*
  782 F.Supp. 996, 999 (M.D.Pa.1990).........................................................30

*U.S. ex rel. Battiata v. Puchalski*,
  906 F. Supp. 2d 451, 461 (D.S.C. 2012) ....................................................21

*U.S. ex rel. Colquitt v. Abbott Labs.,*
  864 F. Supp. 2d 499, 537 (N.D. Tex. 2012) ...............................................18

*United States ex rel. Madden v. Gen. Dynamics Corp.,*
  4 F.3d 827, 830–31 (9th Cir.1993) .............................................................19

*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.,*
  *505 F. Supp. 2d 20, 26-27 (D.D.C. 2007)* ..........................................29,30,31

*U.S. ex rel. Salvatore v. Fleming*,
  No. CIV.A. 11-1157, 2015 WL 1326330,
  at *3 (W.D. Pa. Feb. 24, 2015) *report and recommendation adopted,*
  No. CIV.A. 11-1157, 2015 WL 1384487 (W.D. Pa. Mar. 25, 2015)............21

*William V. Dorsaneo III, et. al,*
  Texas Litigation Guide § 293.01 [1A] (2013)..............................................12

*Yasuda Fire & Marine Ins. Co. of Am. v. Criaco,*
  225 S.W.3d 894, 898 (Tex.App.-Houston [14th Dist.] 2007, no pet.)..........29


**STATUTES**

25 Tex. Admin. Code § 33.71 ...........................................................................1

Texas Medicaid Fraud Protection Act §36.116 ...............................................27

## GOVERNMENT REPORTS

Sunset Advisory Commission, Staff Report, Health and Human Services Commission and System Issues, (Oct. 2014), www.sunset.texas.gov/public/uploads/files/reports/HHSC and System Staff Report.pdf . ..................................................................................................2

## ARTICLES

Kiah Collier, J. David McSwane, Jonathan Tilove, "A Second Top Texas Health Official Resigns, and Probe is Launched", Austin American-Statesman (Dec. 19, 2014, 9:37 AM), www.mystatesman.com/news/news/state-regional-govt-politics/a-second-top-texas-health-official-resigns-and-pro/njXd2/. .......................3

Eric Dexheimer, "Auditors: State Medicaid Fraud Investigations Poorly Manages, Unfair", Austin American Statesman, (Oct. 3, 2014), www.mystatesman.com/news/news/state-regional-govt-politics/auditors-state-medicaid-fraud-investigations-poorl/nhbnL/? .......................................2

Eric Dexheimer, "Fraud Inspector's Falsified Work Could Cost State Millions", Statesman (October 18, 2014, 7:16 PM), www.statesman.com/news/news/state-regional-govt-politics/fraud-inspectors-falsified-work-could-cost-state-m/nhmr5/.............................................................2

J. David McSwane, "Fired State Health Worker Sues Embattled Texas Health Agency", Austin American Statesman (Dec. 19, 2014, 10:04), www.mystatesman.com/news/news/state-regional-govt-politics/fired-state-health-worker-sues-embattled-texas-hea/njXfH/#adaafd2c.3917081.735751 . ...................3

J. David McSwane, "State Officials: Fraud Contract Bypassed Two Reviews", Austin American-Statesman, (Dec. 22, 2014, 9:57 PM), www.mystatesman.com/news/news/state-regional/state-officials-fraud-contract-by-passed-to-review/njYwb/ .......................................................................3

*Update: "Cooked Books" Caused OIG to Settle for $39,000 in $16 Million Dental Medicaid Case,* Texas Dentists For Medicaid Reform, Texas Dentists for Medicaid Reform (TDMR, Harlingen, TX) Oct. 23, 2014, *www.*tdmr.org/cooked-books-caused-oig-settlement-dental-medicaid-case/......................................2

## STATEMENT OF THE CASE

*Nature of the Case*:        This is an appeal from the trial court's grant of: 1) the State's plea to the jurisdiction, which dismissed the Dental Groups' counterclaims against the State, and 2) the State's Motion to Dismiss the Dental Groups' third-party claims against Xerox.

*Trial Court*:        The Honorable Judge Yelonosky, Judge of the 53rd District Court, Travis County, Texas.

*Trial Court Disposition*:        On April 28, 2015, Judge Yelonosky signed an Order Granting State's Plea to the Jurisdiction and Motion to Dismiss third-party Claims.

## STATEMENT OF JURISDICTION

The court has jurisdiction to consider this interlocutory appeal pursuant to Tex. Civ. Prac. and Rem. Code section 51.014(a)(8) because this appeal follows the granting of a plea to the jurisdiction brought by a governmental unit.

## RECORD REFERENCES

References to the parties and record are as follows:

"Dental Group" refers to Appellants.

"TMFPA" refers to Texas Medicaid Fraud Prevention Act.

"Harlingen I" refers to *Janek v. Harlingen Family Dentistry, P.C.*, 451 S.W.3d 97 (Tex. App.—Austin 2014, no pet.).

"Harlingen II" refers to *Harlingen Family Dentistry, P.C. v. Texas Health & Human Services Comm'n,* 452 S.W.3d 479 (Tex. App.—Austin 2014, pet. filed).

"FCA" refers to Federal False Claims Act.

References to the Record will be to the Court Record at "CR ___"

# ISSUES PRESENTED

**Issue 1.** **Did the trial court err in dismissing the Dental Group's counterclaims against the State since:**

    **A. The State initiated this case seeking monetary relief against the Dental Group, invoking the waiver of immunity rule set out in *Reata v. City of Dallas*,**

    **B. The Dental Group's counterclaims are compulsory and/or inextricably intertwined with the State's TMFPA claim, so denying the ability to bring counterclaims denies due process,**

    **C. Counterclaims and third party claims are common in Federal False Claims Act cases, and those federal cases provide strong logic and persuasive authority for adopting the Federal approach to allowing such claims, and**

    **D. None of the State's bases for asserting a lack of jurisdiction are meritorious.**

**Issue 2.** **Did the trial court err in dismissing the Dental Group's third party claims against Xerox, since:**

    **A. Many of the same arguments and logic regarding the Dental Group's counterclaims is equally applicable to third party claims, and**

    **B. In any event, the Dental Group's claims should have been severed, not dismissed.**

Texas Medicaid provides a full range of orthodontic services to eligible Texas citizens. Medicaid orthodontics are not provided under the standard fee-for-service model, wherein providers are paid for a service after they have provided it and submitted the bill for payment. Instead, the law requires that all orthodontic services be "prior authorized." 25 Tex. Admin. Code § 33.71. Prior authorization requires a review of the patient's dental condition and the requested orthodontic services, confirmation of the medical necessity of the services, and notification to the provider that the services will be covered for payment (absent some subsequent or intervening disqualifying factor). Xerox was the State's agent charged with administering the prior authorization program for orthodontics from January 1, 2004 through February 29, 2012.

Appellants (hereinafter "Dental Group") were Medicaid orthodontic providers. (CR 7 at paragraph 2.19). Beginning in 2011, the State, through Texas Health and Human Services Commission Office of Inspector General, filed separate administrative cases against members of the Dental Group.[1] After some

---

[1] *See, e.g. Harlingen Family Dentistry v. Texas Health and Human Services Commission Office of Inspector General*, SOAH Cause No. 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; *Antoine Dental Center v. Texas Health and Human Services Commission Office of Inspector General,* SOAH Cause No. 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; *National Orthodontix Management, LLC v. Texas Health and Human Services Commission Office of Inspector General*, SOAH Cause No. 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 and 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.

members of the Dental Group complained publicly that the State, through its agent Xerox, had reviewed and prior authorized all of the services at issue in the administrative cases, the State cancelled Xerox's contract and sued it under the Texas Medicaid Fraud Prevention Act ("TMFPA"). *See* Cause No. D-1-GV-14-000581; *The State of Texas v. Xerox Corporation; Xerox State Healthcare, LLC; ACS State Healthcare, LLC, a Xerox Corporation,* in the 53rd Judicial District Travis County, Texas. *Inter alia,* the State's lawsuit against Xerox claims that Xerox fraudulently issued prior authorization approvals to Medicaid providers, including the Dental Group. That lawsuit further claims that Xerox did so without conducting a proper review of the patients' dental condition, without using licensed personnel, without conclusively determining medical necessity, and without applying Medicaid policy. Throughout 2014, the State pursued its civil TMFPA lawsuit against Xerox who pre-approved and oversaw the delivery of the orthodontic services, while simultaneously pursing its administrative claims against the Dental Group providers who actually rendered the orthodontic services.

Following a series of high profile news stories, Legislative reports, and Attorney General investigations regarding fabrication of evidence in the administrative investigations,[2] misuse of administrative power in the cases,[3] and

---

[2] Eric Dexheimer, "Fraud Inspector's Falsified Work Could Cost State Millions", Statesman (October 18, 2014, 7:16 PM), www.statesman.com/news/news/state-regional-govt-politics/fraud-inspectors-falsified-work-could-cost-state-m/nhmr5/; *Update: "Cooked Books"*

general corruption in the OIG,[4] the State abandoned and nonsuited the administrative cases against the Dental Group in December 2014.

The day after it nonsuited the administrative cases, the State initiated this civil lawsuit against the Dental Group. (CR 2)[5]. Like its case against Xerox, the State's claims were made under the TMFPA. This lawsuit contains six categories of allegations, but only one of those allegations is particularly relevant to this appeal. That allegation, which applies to all members of the Dental Group, is restated exactly the same for all members of the Dental Group:

*Caused OIG to Settle for $39,000 in $16 Million Dental Medicaid Case,* Texas Dentists For Medicaid Reform, Texas Dentists for Medicaid Reform (TDMR, Harlingen, TX) Oct. 23, 2014;

[3] Sunset Advisory Commission, Staff Report, Health and Human Services Commission and System Issues, (Oct. 2014),; Eric Dexheimer, "Auditors: State Medicaid Fraud Investigations Poorly Manages, Unfair", Austin American Statesman, (Oct. 3, 2014), www.mystatesman.com/news/news/state-regional-govt-politics/auditors-state-medicaid-fraud-investigations-poorl/nhbnL/?

[4] J. David McSwane, "State Officials: Fraud Contract Bypassed Two Reviews", Austin American-Statesman, (Dec. 22, 2014, 9:57 PM), www.mystatesman.com/news/news/state-regional/state-officials-fraud-contract-by-passed-to-review/njYwb/ ; J. David McSwane, "Fired State Health Worker Sues Embattled Texas Health Agency", Austin American Statesman (Dec. 19, 2014, 10:04), www.mystatesman.com/news/news/state-regional-govt-politics/fired-state-health-worker-sues-embattled-texas-hea/njXfH/#adaafd2c.3917081.735751 ; Kiah Collier, J. David McSwane, Jonathan Tilove, "A Second Top Texas Health Official Resigns, and Probe is Launched", Austin American-Statesman (Dec. 19, 2014, 9:37 AM), www.mystatesman.com/news/news/state-regional-govt-politics/a-second-top-texas-health-official-resigns-and-pro/njXd2/.

[5] The State subsequently filed an Amended Petition (CR 110) that is substantively identical to its Original Petition (CR 2) on all claims and issues that are relevant in this appeal.

> **VI. ACTIONABLE CONDUCT OF ANTOINE DENTAL CENTER DEFENDANTS**
>
> **6.1** On or about January 1, 2004 through February 29, 2012, the Antoine Defendants submitted or caused to be submitted false statements, information or misrepresentations of material facts, or omitted pertinent facts to Texas Medicaid to obtain Medicaid prior authorization and payment for orthodontic services and appliances. Specifically, the Antoine Defendants submitted, or caused to be submitted, to Texas Medicaid prior authorization ("PA") forms and corresponding Handicapping Labio-Lingual Deviation ("HLD") score sheets misrepresenting the severity of patients' dental conditions, filed claims based on those score sheets, and was paid by Texas Medicaid for services for which the patients were not qualified to receive.

(CR 14 (Antoine), 14-15 (Harlingen), 16 (Herrscher), 17 (M&M), 19 (National), 20 (RGV Smiles)).

The Dental Group answered, asserting counterclaims against the State and third party claims against Xerox. (CR 29). The State answered the Dental Group's counterclaims with a Plea to the Jurisdiction and Plea in Bar regarding the Dental Groups' counterclaims against the State. (CR 43). That same answer included a Motion to Dismiss the Dental Group's claims against Xerox. (CR 43). On April 28, 2014, the trial court granted both motions. (CR 383). The Dental Group timely filed this interlocutory appeal. (CR 385).

**SUMMARY OF ARGUMENT**

This case is the final leg in the "Triple Crown" of State overreach that this court has already dealt with in *Janek v. Harlingen Family Dentistry, P.C.*, 451 S.W.3d 97 (Tex. App.—Austin 2014, no pet.) (*Harlingen I*) and *Harlingen Family Dentistry, P.C. v. Texas Health & Human Services Comm'n,* 452 S.W.3d 479 (Tex. App.—Austin 2014, pet. filed) (*Harlingen II*). In *Harlingen I*, this Court stopped the State from continuing to withhold Harlingen's money even after Harlingen established that it had not acted fraudulently. In *Harlingen II*, this Court rejected the State's efforts to maintain a draconian payment hold just because a simple program violation had been alleged. Harlingen and similarly situated Medicaid dental practices (hereinafter, the Dental Group) are now back for a third time, in a case which is truly the most ominous of the three. Here, the State claims that it can sue the Dental Group for millions of dollars (which the State, through its agent Xerox, actually pre-reviewed and approved for payment), but that the Dental Group cannot bring any counterclaim against the State or third-party claims against Xerox arising out of those parties' conduct in the same transactions that are the basis of the State's claims. In prior opinions, this Court specifically pointed out the due process concerns that plagued the State's actions in *Harlingen I* and *II*. Here, those due process problems are even more obvious, as the State is essentially saying "We can sue you for millions, but you can't seek an offset for our actions,

nor can you attempt to recover from our agent as a third-party defendant (even though we have also sued them for the exact same transactions and funds in a different lawsuit)." This is a complete abuse of both State power and the judicial system, and the Court should rightly be disturbed at the State's arrogant refusal to act reasonably with regard to the providers that serve Texas' indigent and needy.

A core principle of civil law is that when you get sued, you have the right—in fact, an obligation—to bring any associated counterclaims and third-party claims to the case. The State's position turns that rule on its head with this inventive argument: the State is not subject to counterclaims, and a defendant cannot bring third party claims, because the TMFPA does not expressly say that counterclaims and third-party claims are allowed. The State's argument is completely unsupported. For over 75 years, both the U.S. Supreme Court and Texas Supreme Court have held "it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it."

Yet the trial court's order does just that, forestalling any attempt by the Dental Group to recover damages for different, but related, wrongdoing by the State and Xerox with regard to orthodontic services. Not only does the ruling misread the TMFPA, it creates a "superstatute" that subverts the Rule of Civil Procedure and offends due process.

Logic, precedent, and due process demand this court follow the Texas Supreme Court's opinion in *Reata*. *Reata* dovetails perfectly with years of federal court consideration of how counterclaims and third-party claims are handled in Federal False Claims Act cases. Appellants seek a reversal of the trial court order striking the Dental Groups counterclaims and third party claims.

**Issue 1.      Did the trial court err in dismissing the Dental Group's counterclaims against the State?**

**A. The State initiated this case seeking monetary relief against the Dental Group, invoking the waiver of immunity rule set out in *Reata v. City of Dallas*.**

For over 100 years, it has been the rule that sovereign immunity is waived "where a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy." *Anderson, Clayton & Co. v. State ex rel. Allred*, 122 Tex. 530, 537, 62 S.W.2d 107, 110 (Comm'n App. 1933) citing *State v. Zanco's Heirs*, 18 Tex. Civ. App. 127, 129, 44 S.W. 527, 529 (1898), *writ refused* ("When the state of Texas enters its courts as a litigant, it must be held subject to the same rules that govern other litigants…").  More recently, the Texas Supreme Court reaffirmed this rule in the well-known case *Reata Const. Corp. v. City of Dallas,* 197 S.W.3d 371 (Tex. 2006).  In that case, the Texas Supreme Court found that the City of Dallas waived its sovereign immunity when it intervened in a lawsuit related to flood damage from a broken City water main. The *Reata* court stated:

> Therefore, we hold that the decision by the City of Dallas to file suit for damages encompassed a decision to leave its sphere of immunity from suit for claims against it which are germane to, connected with and properly defensive to claims the City asserts. *Once it asserts*

*affirmative claims for monetary recovery, the City must participate in the litigation process as an ordinary litigant…*

*Reata* at 377 (emphasis added). The Texas Supreme Court's reaffirmation of the consequences of filing suit with regard to sovereign immunity could not be more purely stated:

> In circumstances such as those now before us, where the governmental entity has joined into the litigation process by asserting its own affirmative claims for monetary relief, we see no ill befalling the governmental entity or hampering of its governmental functions by allowing adverse parties to assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity. And, our decisions that immunity from suit does not bar claims against the governmental entity if the claims are connected to, germane to, and defensive to the claims asserted by the entity, in effect, modified the common-law immunity doctrine and, to an extent, abrogated immunity of the entity that filed suit.

*Reata* at 376-77. Because the State initiated this action against the Dental Group in the form of affirmative claims for monetary relief, it should be indisputable that the State has waived its immunity from the Dental Group's counterclaims that relate to the subject matter of this lawsuit.

**B. The counterclaims are compulsory and/or inextricably intertwined with the State's TMFPA claims.**

The Dental Group counterclaims that from 2004 through 2012 the State acted independently and/or in conspiracy with Xerox to commit:

1) Common Law Fraud, Fraudulent Misrepresentation and Fraudulent Inducement by knowingly issuing (and/or allowing Xerox to issue) prior

authorization approvals that conclusively stated every single patient treated by the Dental Groups' dentists was qualified to receive the orthodontic services and that the orthodontic services were medically necessary when the State knew or should have known that a full and accurate review of the patients' qualification by a licensed dentist employed by the State had not been completed. From 2004-2012, the State repeatedly assured the Dental Group that proper reviews were being conducted. (CR 30-31 at paragraph 3; CR 34).

2) Breach of Contract by failing to provide qualified staff to review the patients' conditions, by violating Texas law regarding the issuance of medical opinions, by permitting non-dentists to make determinations of medical necessity, and by failing to conduct a reasonable and prudent examination of evidence. (CR 35).

3) Promissory Estoppel because the Dental Group reasonably, substantially, and foreseeably relied on the State's promises regarding prior approval, and regarding the medical necessity of the orthodontic procedures that were provided. (CR 36).

4) Negligence/ Negligent Hiring/ Negligent Supervision/ Negligent Misrepresentation by failing to supervise its agent Xerox, who exercised authority to issue pre-approvals, but did so in violation of the law in

numerous ways, including consistently misstating the proper standard for prior authorization approval to the Dental Group, issuing diagnoses without a dental license, permitting non-licensed and/or unqualified employees to issue approvals, and failing to conduct a reasonable and prudent examination of the dental condition of the patients. (CR 36-38).

5) Gross Negligence/ Misapplication of Fiduciary Property/ Conversion by unlawfully withholding funds from certain Dental Groups under the pretext of an administrative payment hold that was manufactured by the State's own actions. (CR 30-31, 39).

In *City of New Braunfels v. Carowest Land, Ltd.,* 432 S.W.3d 501, 524 (Tex. App.—Austin 2014, no pet.) this Court stated that counterclaims against the State are proper if the counterclaims: 1) are compulsory counterclaims, or 2) would directly or inferentially rebut the facts on which the State's claims are predicated, or 3) share common or related core underlying facts.

### B.1. The counterclaims are compulsory counterclaims.

Analyzing the facts of this case demonstrates that the counterclaims are proper. The *Carowest* decision acknowledged that compulsory counterclaims are considered necessarily " 'germane to,' 'connected with,' and/or 'properly defensive' to" a governmental body's claims by some Courts of Appeals and commentators. *Id.* at 524, FN 82 citing *Harris Cnty. v. Luna–Prudencio,* 294

S.W.3d 690, 697 (Tex.App.—Hous.[1ˢᵗ Dist.] 2009, no pet.); *Sweeny Cmty. Hosp. v. Mendez*, 226 S.W.3d 584, 592-93 (Tex. App.—Hous. [1ˢᵗ Dist.] 2007, no pet.); William V. Dorsaneo III, et. al, *Texas Litigation Guide* § 293.01 [1A] (2013) (citing these cases and concluding that "[a] Defendant's compulsory counterclaim to a governmental unit's affirmative claim for relief necessarily qualifies under *Reata* as a claim that is germane to, connected with, and properly defensive to the governmental entity's claims."). The Dental Groups' counterclaims against the State meet the Tex. R. Civ. Proc. 97 definition of compulsory counterclaims; the counterclaims are factual mirror images of the State's claims on the issue of fraud. The Dental Groups' other counterclaims are so intertwined factually and legally they must be considered compulsory. The *Carowest* Court's nod to the Houston and Dallas Courts of Appeals on the issue of compulsory counterclaims requires that the Dental Groups' counterclaims against the State be sustained.

### B.2. The counterclaims would rebut the State's claims.

Second, the Dental Groups' counterclaims would, either inferentially or directly,[6] rebut the State's claims that the Dental Groups' independently and intentionally made false statements in order to receive payments that would not otherwise have been authorized. See State's First Amended Petition at 4.2- 4.3, 6.1 (against Antoine), 7.1 (against Harlingen Family Dentistry), 8.1 (against

---

[6] *See Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 430 (Tex.2005) ("An inferential rebuttal defense operates to rebut an essential element of the plaintiff's case by proof of other facts.").

Herrscher), 9.1 (against M&M), 10.1 (against National), and 11.1 (against RGV Smiles). The Texas Supreme Court case of *City of Dallas v. Albert*, 354 S.W.3d 368 (Tex. 2011) is instructive on this point, because *Albert* held that counterclaims that rebutted the government's claims were germane to and connected with the government's claims. In *Albert*, police and fire fighters sued seeking breach of contract damages for failure to pay them a higher amount required by a City ordinance. The City subsequently counterclaimed, alleging that, if anything, the police and fire fighters had been overpaid; the City sought reimbursement for those overpayments.

The Texas Supreme Court first found that the City's intervention in the lawsuit had waived immunity because "once a governmental entity has asserted an affirmative claim for monetary relief, it must participate in the litigation process as an ordinary litigant as to that claim." *Albert* at 375. The Court then analyzed the police and fire fighters' claims against the City. The Court found the police and fire fighters' claims were necessarily defensive to the City's claims because the group could not be both overpaid and underpaid at the same time. Stated differently, if the police and fire fighters were right about being underpaid then the City must be wrong about the group being overpaid, and vice versa.

In this case, the Dental Groups' counterclaims against the State at paragraphs 3 and 13-29 (CR 30-31, 34-39) include allegations that the State

independently, or in a conspiracy with Xerox, committed fraud, breach of contract, negligence and gross negligence by acting:

1) to induce members of the Dental Group to make certain representations to the State from 2004-2012, although the State now claims those representations were false;

2) to make members of the Dental Group believe that the services were properly authorized for payment at the time, although the State now claims the services should not have been authorized for payment;

3) to lead members of the Dental Group to apply from 2004-2012 what the State now claims is an improper standard of medical necessity;

4) to withhold information regarding the proper standard for medical necessity;

5) to make members of the Dental Group believe the services had been properly reviewed and/or irrevocably deemed to be medically necessary; and

6) to fabricate a pretext upon which the State could allege the members of the Dental Group made misstatements of fact and/or withhold funds under a payment hold.

The Dental Group allegations rebut the State's claim that the Dental Group intentionally "submitted or caused to be submitted false statements, information or

misrepresentations of material facts, or omitted pertinent facts to Texas Medicaid to obtain Medicaid prior authorization and payment for orthodontic services and appliances."[7] (CR 110) If the Dental Group was induced or fraudulently led to make certain statements, then it would at least inferentially rebut the State's assertion that the Dental Group **_intended_** to make misstatements of facts since the Dental Group members were acting at the State's direction regarding what to represent, how to represent it, what could be authorized, what the standard for medical necessity was, who was ultimately responsible for determining medical necessity, etc. Intent is important because the State's fraud claims under the TMFPA require *scienter*.

Likewise, it would be impossible for the Dental Group to have **_actually made_** misstatements of fact if the statements were true when they were made in 2004-2012. But what if the State defrauded the Dental Group by deliberately misleading and misstating what to represent on HLD score sheets, how to represent conditions on HLD scores sheets, what could be authorized for treatment, what the standard for medical necessity was, or who was ultimately responsible for determining medical necessity? If that is the case, and the State committed fraud against the Dental Group members by misleading them, then the Dental Group

---

[7] See CR 110 State's First Amended Petition at 6.1 (against Antoine), 7.1 (against Harlingen Family Dentistry), 8.1 (against Herrscher), 9.1 (against M&M), 10.1 (against National), and 11.1 (against RGV Smiles).

should be entitled to offset the State's claims that the Dental Group made actual misstatements (assuming, for the sake of argument, the State might be technically correct), by proving that those technical misstatements were due to the State's fraud, breach of contract, negligence and/or gross negligence. Thus, the Dental Groups' counterclaims, if proven, would directly or inferentially rebut the *scienter* element of fraud, as well as the ultimate issue of whether members of the Dental Group made any statements that were actually, materially false.

### B.3. The counterclaims share a common core of facts.

Finally, it should be undisputed that the Dental Groups' counterclaims share a common core of underlying facts. In *Carowest*, the Court analyzed Carowest's counterclaims against the government, which equated to a "this is not our fault, this is yours" argument by Carowest:

> As a threshold observation, the fact that Carowest's claims sound in tort rather than contract does not in itself mean that they cannot be "germane to, connected with, and properly defensive to" the City's contract claim, as the inquiry's proper focus is on the operative facts rather than the particular legal theories asserted. Turning to that inquiry, the chief focus of these tort claims, which are styled in terms of "fraud," "breach of fiduciary duty," and "conspiracy" to commit fraud, is the City's alleged efforts to conceal or mislead Carowest … while purporting to enforce Carowest's obligations…Consequently, these tort claims, like Carowest's contract claims, implicate the same core operative facts underlying the City's monetary claim—namely, whether the City and Carowest complied with their respective obligations … —and proof that Carowest complied, the City did not, or both would inferentially rebut the City's claim. The same would be true to the extent Carowest's claims complain of any additional conduct by the City that would amount to a breach of the City's

contractual obligations or a defense to Carowest's asserted failure to perform. In these ways, Carowest's tort claims… are "germane to, connected with, and properly defensive to" the City's contract claim.

*Carowest* at 526.The same considerations are at play in this case. The State's core contention is that the Dental Group submitted false prior authorization forms and HLD score sheets that misrepresented the severity of patients' dental conditions. (CR 120 at paragraph 6.1). Like *Carowest*, the counterclaims here assert that the State concealed facts, failed to meet its own obligations, and intentionally misled the Dental Group to create a pretext for asserting that the Dental Group did not meet their obligations. The *Carowest* court found similar fraud allegations under those facts were germane to, connected with and properly defensive to the government's claims. Thus, *Carowest* supports the proposition that the counterclaims are proper on any of the three bases for sustaining counterclaims against the State.

**C.    Counterclaims and third party claims are common in Federal False Claims Act cases, and those federal cases provide strong logic and persuasive authority for adopting the Federal approach to allowing such claims.**

One line in the State's pleadings summarizes the State's and the trial court's improper interpretation of TMFPA cases: "The State is entitled to pursue a Medicaid Fraud claim against a defendant to the exclusion of all other parties." (CR 47, 65). Stated more bluntly, the State believes that a TMFPA case is a one-sided, *State v. whoever the State wants to sue, and **only** whoever the State wants to*

*name,* proposition; no counterclaims by a defendant are available, and no third party claims from a defendant are allowed. That position lacks any legal basis, and is a self-serving interpretation that is at odds with the Federal False Claims Act.

Admittedly, the TMFPA is silent regarding the propriety of counterclaims and third-party claims by TMFPA defendants like the Dental Group. But the TMFPA is modelled after the Federal False Claims Act (FCA). *See U.S. ex rel. Colquitt v. Abbott Labs.,* 864 F. Supp. 2d 499, 537 (N.D. Tex. 2012) (finding "provisions of the state and federal false claims acts are substantively identical"). If the court needs persuasive authority for the applicability of *Reata* and its logic for permitting counterclaims and third-party claims, this court should look at the sound reasoning in federal FCA cases. Federal FCA cases hold "recoupment counterclaims" against the Government are viable in reaction to Federal FCA complaints, despite equally robust doctrines of sovereign immunity for the federal government.

**C.1. FCA counterclaims permit defendants to prove government liability and damages, but only up to the level necessary to offset the government's monetary recovery (just like *Reata*).**

"When a state initiates a [False Claims Act] lawsuit, it waives its sovereign immunity to the extent required for the lawsuit's complete determination." *Texas v. Caremark, Inc.*, 584 F.3d 655, 659 (5th Cir. 2009). Like the limited waiver of immunity discussed in *Reata* at 376-77, counterclaims in federal FCA waive

immunity up to the level permitted to "defeat or diminish the sovereign's recovery." *United States v. Intrados/Int'l Mgmt. Grp.*, 277 F. Supp. 2d 55, 62 (D.D.C. 2003); *see United States v. Agnew*, 423 F.2d 513, 514 (9th Cir.1970); *see also United States v. Dalm*, 494 U.S. 596, 611, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (noting that the doctrines of recoupment and sovereign immunity "only [ ] permit a transaction which is made the subject of suit by plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole") (quoting *Rothensies v. Elec. Storage Battery Co.*, 329 U.S. 296, 299, 67 S.Ct. 271, 91 L.Ed. 296 (1946))")). Stated differently, the government waives immunity, but only to the level necessary to offset the government's monetary recovery against the defendant. See *United States ex rel. Madden v. Gen. Dynamics Corp.,* 4 F.3d 827, 830–31 (9th Cir.1993) (denial of qui tam defendant's right to bring counterclaim that may be compulsory offends due process); *Agnew*, at 514 ("Although a counterclaim may be asserted against a sovereign by way of set off or recoupment to defeat or diminish the sovereign's recovery, no affirmative relief may be given against a sovereign in the absence of consent."); *United States v. Campbell*, No. CIV.A. 08-1951, 2011 WL 43013, at *11 (D.N.J. Jan. 4, 2011). Given the massive amount of Federal precedent concluding that a defendant's counterclaims are permissible to offset false claims damages, this conclusion is unassailable. The logic used in parsing, and adopting, this limited waiver of

immunity is exactly what the Texas Supreme Court considered, and adopted, in *Reata*.

### C.2. What type of counterclaims are proper? Any claim that does not depend on finding the defendants liable.

The court in *United States v. Campbell* No. CIV.A. 08-1951, 2011 WL 43013, at \*11 (D.N.J. Jan. 4, 2011) concisely delivered the rule for what counterclaims are allowed:

> Counterclaims or third party claims by an FCA Defendant that are based on damages which are independent claims may be permitted, so long as those claims do not "have the effect of providing for indemnification or contribution." *Miller,* 505 F.Supp.2d 20 at 27 (internal citations omitted); *see also United States ex rel. Madden v. Gen. Dynamics Corp.,* 4 F.3d 827 (9th Cir.1993). Permissible third party claims in the FCA context are available, for example, when a FCA Defendant has a cause of action for damage to him independent of his FCA liability. "[A] claim by an FCA Defendant which requires for its success a finding that the FCA Defendant is liable is the kind of claim barred by the FCA." *Miller,* 505 F.Supp.2d at 28; *see also United States v. Nardone,* 782 F.Supp. 996, 999 (M.D.Pa.1990) (dismissing FCA Defendants' counterclaim and third party complaint seeking indemnification).

*Campbell* is not alone. It is well settled that claims, other than claims for indemnification or contribution, are permissible in FCA actions. *See Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1213 (9th Cir. 2009), *as amended on denial of reh'g and reh'g en banc* (Jan. 6, 2010) ("[Q]ui tam [FCA] Defendants may bring third party claims under the circumstances outlined in this

opinion.").[8] The same analysis applies throughout FCA litigation whether brought by the government directly or through a *qui tam* action. *See U.S. ex rel. Salvatore v. Fleming*, No. CIV.A. 11-1157, 2015 WL 1326330, at *3 (W.D. Pa. Feb. 24, 2015) *report and recommendation adopted,* No. CIV.A. 11-1157, 2015 WL 1384487 (W.D. Pa. Mar. 25, 2015). ("[T]he Court concludes that the same analysis equally estops a *qui tam* Defendant from asserting cross-claims for indemnification and contribution against co-Defendants [or third-party Defendants] based upon their liability under the FCA, but permits cross-claims for 'independent damages' against co-Defendants [or third-party Defendants].") So the only question is whether the Dental Groups' counterclaims are "independent" or not.

**C.3. The Dental Groups' counterclaims and third-party claims are independent claims.**

The Dental Groups counterclaims and third-party claims fall into two categories: 1) completely independent claims that would permit a separate recovery against the State and/or Xerox regardless of the Dental Group's liability under the TMFPA, and 2) claims whereby the Dental Group can prevail against the State and/or Xerox if the Dental Group is found to be not liable under the TMFPA

---

[8] *U.S. ex rel. Battiata v. Puchalski*, 906 F. Supp. 2d 451, 461 (D.S.C. 2012) (FCA Defendants' counterclaims for damages which were not dependent on a finding of liability under the FCA were not barred); *U.S. ex rel. Salvatore v. Fleming*, No. CIV.A. 11-1157, 2015 WL 1326330, at *3 (W.D. Pa. Feb. 24, 2015) *report and recommendation adopted,* No. CIV.A. 11-1157, 2015 WL 1384487 (W.D. Pa. Mar. 25, 2015); *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 505 F. Supp. 2d 20, 26-27 (D.D.C. 2007).

allegations. Since neither of those are an attempt to shift liability to the State or Xerox in the event the Dental Group is found liable, those claims are permissible.

Assume, for the sake of argument, that a jury determines Dental Group member Harlingen Family Dentistry did not intentionally inflate HLD score sheets in an attempt to receive payments for unqualified orthodontic services.[9] Harlingen Family Dentistry's claims for liability and damages against the State and Xerox for, *inter alia,* failing to fulfill its duty to definitively determine medical necessity prior to the rendering of orthodontic services might be the next question on the jury charge. Or perhaps the next question might be whether the State and Xerox made false statements to Harlingen Family Dentistry regarding the standard for what would qualify a patient for orthodontic services. Or the next jury question could be whether the State and/or Xerox induced Harlingen Family Dentistry to make technical, but unintentional (and thus not fraudulent under the TMFPA), misstatements about whether patients were qualified for orthodontic services. Likewise, Harlingen Family Dentistry's claims that the State and Xerox made false and misleading representations (*e.g.* regarding its review/prior authorization

---

[9] A court has, in fact, already determined this fact. In *Janek v. Harlingen Family Dentistry, P.C.*, 451 S.W.3d 97 (Tex. App.—Austin 2014, no pet.), Harlingen mandamused the Executive Director of the Texas Health and Human Services Commission to force compliance with a HHSC Final Order requiring release of sequestered funds. The release of those funds was required because an administrative proceeding had determined the State had no evidence Harlingen committed fraud or willful misrepresentation with regard to HLD score sheets. Nevertheless, that is exactly the same claim the State has brought in this civil case.

process, regarding the dispositive nature of its prior authorization decisions vis-a-vis medical necessity, and regarding payments for prior authorized services) will be actionable and recoverable if Harlingen itself did not makes those false and misleading statements. Thus, the counterclaims are "independent claims."

**D. None of the State's bases for asserting a lack of jurisdiction are applicable.**

The State's Plea to the Jurisdiction argued that the District Court did not have jurisdiction because:

1) *Reata* involved a tort action, while the State claims this Medicaid Fraud action is not a tort case, so the State believes *Reata* should not apply;

2) The State claims the only germane counterclaims are claims under the TMFPA;

3) The State asserts that the counterclaims are not counterclaims at all, but are instead the affirmative defense of estoppel;

4) Since the TMFPA does not expressly say that when the State files a TMFPA suit that it waives sovereign immunity, there is no waiver; and

5) The Dental Group does not have standing to sue for breach of contract.

Each point will be addressed in turn below.

**D.1. A Medicaid Fraud case is still a fraud case; that is, a tort action.**

The State wants this Court to believe there is something special about this TMFPA case that changes the normal rules and makes relevant case law become

inapplicable. The State's claim that this is a "statutory law enforcement action" is a transparent attempt to elevate this case and convert it into something that it is not. Anytime the State or an agency bases a legal action on a statute, the case could be called a "statutory law enforcement action." And while the State has cited to a statute (the TMFPA) as the basis for its claims, this case is more plainly described as a suit to recover money and monetary damages (CR 129 at paragraph 17.2) for intentional acts by members of the Dental Group. The fact that the monies were paid through the Medicaid program instead of some other State program, such as the State's windstorm insurance program, does not transform this case into something wildly special. The alleged intentional act in this case—fraud—is a simple tort, albeit one for which the remedies are statutorily created under the TMFPA. Thus, there is no reason why *Reata,* which was a case where the government asserted tort claims, should not govern in this case.

**D.2. Counterclaims do not have to mirror the State's cause of action.**

It is pure fabrication for the State to claim that the only claims the Dental Group could bring in this case are claims under the TMFPA. (CR 48). This court has specifically rejected the contention that counterclaims against the government must be reciprocal or brought under the same legal theory. *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 524 (Tex.App.—Austin 2014, no pet.) ("As a threshold observation, the fact that Carowest's claims sound in tort rather

than contract does not in itself mean that they cannot be 'germane to, connected with, and properly defensive to' the City's contract claim, as the inquiry's proper focus is on the operative facts rather than the particular legal theories asserted."); *see also Sweeny Cmty. Hosp. v. Mendez*, 226 S.W.3d 584, 592 (Tex.App.—Houston [1st Dist.] 2007) (holding that it is not necessary for counterclaims to mirror the cause of action brought by the governmental body, and finding tortious interference, defamation, and retaliation claims were proper where the government had sued for breach of contract).

### D.3. The Dental Group has not asserted the affirmative defense of estoppel, but it could rightfully do so later, especially based on these facts.

The State recasts the Dental Group's counterclaims as "estoppel" in the hope that this Court will conclusively hold that the State is not subject to equitable defenses like estoppel. The State is incorrect on both counts: the Dental Group's counterclaims are not the equivalent of estoppel, and even if they were, the State can be subject to estoppel.

The fact that the State and its agent, Xerox, pre-authorized everything that the State is now seeking to recover is an important, and undisputed, fact. Somewhere down the line that fact may be part of an estoppel defense, but the facts surrounding any alleged estoppel are independent of the Dental Group's tort and contract counterclaims. Stated differently, just because some of the facts that

will be revealed as part of some of the counterclaims might support an estoppel defense by the Dental Group does not mean the counterclaims equate to estoppel. They do not. The Dental Group's counterclaims require factual and legal elements that are far beyond what would be relevant to an estoppel claim.

And even if the State could change the Dental Group's counterclaims into affirmative defenses, it is simply not true that estoppel, laches and other equitable remedies cannot apply against the State. This Court is not a stranger to applying estoppel to the government to prevent an unjust result. *City of Austin v. Garza*, 124 S.W.3d 867, 875 (Tex. App.—Austin 2003, no pet.) ("While we acknowledge that the applicability of estoppel against municipalities is rare, we conclude that it would be manifestly unjust for the City to retain the benefits of its mistake yet avoid its obligations… it would be manifestly inequitable for the City to retain the land Garza donated so that he could take advantage of transfer credit provisions available only under the [ordinance] and later deny him the benefit of developing under the [ordinance]."); *see also City of Fredericksburg v. Bopp,* 126 S.W.3d 218 (Tex. App.—San Antonio 2003, no pet.). The Texas Supreme Court has addressed and/or applied estoppel against the government many times. *See City of San Antonio v. Schautteet*, 706 S.W.2d 103, 105 (Tex. 1986) (applying estoppel); *Roberts v. Haltom City*, 543 S.W.2d 75 (Tex. 1976) (applying estoppel); *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770 (Tex. 2006) (citing *City of*

*Austin v. Garza* with approval); *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835-36 (Tex. 1970)

Directing the Dental Group to provide orthodontic services and later claiming that the delivery of those same services was illegal or improper is manifestly unjust. But this court may not need to decide the issue at all, and it certainly does not need to do so immediately. The Dental Group has not pled any affirmative defenses such as estoppel.

### D.4. The statute does not have to expressly waive sovereign immunity, waiver by action will suffice in this case.

As stated above, it does not matter that the TMFPA does not contain a waiver of sovereign immunity. It does not need to. By filing suit against the Dental Group, the State affirmative placed itself in the position of an ordinary litigant. "It would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it." *City of Galveston v. State*, 217 S.W.3d 466, 472 (Tex. 2007) quoting *Reata* at 375-76.

The State references TMFPA §36.116 for its idea that the Legislature specifically intended to not waive sovereign immunity when the State brings TMFPA claims. The State's argument takes TMFPA language out of context. Section 36.116 is found in Subchapter C of the TMFPA titled "Actions By Private

Persons"[10]; which concerns fraud actions brought in the name of the State by a citizen of the State. Subchapter C section 36.116 operates only to prevent the citizen from waiving sovereign immunity on behalf of the State when the citizen files a TMFPA claim. The purpose is to prevent citizens from being able to waive the State's immunity at any time by simply bringing an ill-conceived lawsuit under the TMFPA.

The State references §36.116 to argue that the State never waives sovereign immunity in a TMFPA case. But that is not what that section says. And *Reata* does not require that the TMFPA or any other statute expressly do so. Simply filing affirmative claims for monetary relief is enough to waive the State's sovereign immunity, and the State has done so. The TMFPA does not need to say that when the State files suit it waives sovereign immunity—case law already says that is the consequence of bringing a claim for monetary relief.

### D.5. Standing is not really a jurisdictional question, so a plea to the jurisdiction is improper to resolve the State's

The State claims that the Dental Groups' counterclaims fail to plead facts to support standing, and that the lack of standing is jurisdictional. The State is incorrect on the facts and the law. "The question of whether a party is entitled to sue on a contract is often informally referred to as a question of 'standing,' it is not truly a standing issue because it does not affect the jurisdiction of the court; it is,

---

[10] Subchapter B of the TMFPA is titled "Action By the Attorney General."

instead, a decision on the merits. [citation omitted] When it is established that a breach of contract plaintiff lacks entitlement to sue on a contract, the proper disposition may be summary judgment on the merits, but it is not dismissal for want of jurisdiction." *Heartland Holdings, Inc. v. U.S. Trust Co. of Texas N.A.*, 316 S.W.3d 1, 7 (Tex.App.—Houston [14th Dist] 2010, no pet) citing *Yasuda Fire & Marine Ins. Co. of Am. v. Criaco,* 225 S.W.3d 894, 898 (Tex.App.-Houston [14th Dist.] 2007, no pet.), *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–54 (Tex.1999), et al.). Thus, the State's arguments on this point are not jurisdictional. The trial court has not taken any evidence on standing, so there were no facts developed to support a factual disposition on the Dental Groups' standing.

**Issue 2.     Did the trial court err in dismissing the Dental Group's third party claims against Xerox, since:**

> **A. The arguments and logic regarding the Dental Group's counterclaims is equally applicable to third party claims.**

The TMFPA is silent regarding third party claims. However, Federal FCA precedent treats counterclaims and third party claims the same way. They are often discussed in the same breath. See *United States v. Campbell* No. CIV.A. 08-1951, 2011 WL 43013, at *11 (D.N.J. Jan. 4, 2011) ("Counterclaims or third party claims by an FCA Defendant that are based on damages which are independent claims may be permitted…"); *see Miller,* 505 F.Supp.2d at 27 (FN 1) (indicating that whether the claims should be properly called counterclaims, cross-claims, or third-

party claims was irrelevant to the analysis about whether the claims were viable). Permissible third party claims in the FCA context are available, for example, when a FCA Defendant has a cause of action for damage to him independent of his FCA liability. "[A] claim by an FCA Defendant which requires for its success a finding that the FCA Defendant is liable is the kind of claim barred by the FCA." *Miller,* 505 F.Supp.2d at 28; *see also United States v. Nardone,* 782 F.Supp. 996, 999 (M.D.Pa.1990) (dismissing FCA Defendants' counterclaim and third party complaint seeking indemnification). Thus, the analysis set out above regarding the Dental Groups' counterclaims against the State is equally applicable to the third party claims.

Part and parcel with the need to maintain Providers' claims is the fact that this Court cannot make the ultimate decision regarding whether **any** of Providers' third-party claims are essentially contribution or indemnity claims (and therefore may be barred) until each Provider's liability has been determined. *U.S. ex rel. Miller* explored two prior, consistent, FCA cases and expressly found that allowing the counterclaims and cross-claims to be maintained and proceed through a final determination was necessary:

> Illustrations are provided by the cases. For instance, in *Burch ex rel. U.S. v. Piqua Engineering, Inc.,* 145 F.R.D. 452, 456–57 (S.D.Ohio 1992), an FCA Defendant counterclaimed against the relator, alleging breach of various duties based on poor work performance, and also defamation. **The court allowed all claims to go forward, which was decidedly correct.** The poor work performance claim was

independent of the FCA claims in the first sense described by this Court—it could succeed or fail regardless of whether Defendant violated the FCA. The defamation claim was separate from the FCA claims in the second sense described by this Court; the Defendant could sustain its claim only if it prevailed on the FCA claims and demonstrated there was no truth to the relator's allegations.

Similarly, in *United States ex rel. Stephens v. Prabhu,* 1994 WL 761237 at *1, Civil Action No. 92–653 (D.Nev.1994), the Defendants brought claims against relator for libel, trade libel, abuse of process, malicious prosecution, and infliction of emotional distress, all arising from the relators' allegations that Defendants had submitted false claims. **The court allowed the claims to go forward, recognizing that if Defendants were found not liable in the FCA case, their counterclaims would be viable.** If they were found liable in the FCA case, then their counterclaims would fail as a matter of law, and in addition would be barred by the FCA as impermissible attempts to seek contribution or indemnity. But when Defendants brought third-party claims against other individuals who they alleged had participated in submitting the false claims, the court disallowed these claims, since they could only succeed if Defendants were held liable, and thus were barred under the FCA.

*U.S. ex rel. Miller*, 505 F. Supp. 2d at 28 (emphasis added).

In summary of the argument presented above, federal FCA cases permit counterclaims and third-party claims to be made by a FCA Defendant, subject to this sensible rule: counterclaims and third-party claims by a FCA Defendant are permitted as long as they do not require, as a prerequisite, a finding of the Defendant's liability. *Id.* at 26. Truly independent claims are permitted; and even dependent claims are permitted when the counterclaims and third-party claims can **only** prevail if the Defendant is found **not liable**, because those claims can succeed upon a finding that the State's accusations were untrue. *Id.* at 27-28. Finally, for

claims that may succeed if the State's accusations are untrue, those claims must be maintained until a decision on the Defendant's liability is final. *Id.* at 28. Only then can the Court determine whether the Defendant's claims must be dismissed on the ground that they will have the effect of providing for indemnification or contribution. *Id.* The Dental Group encourages this Court to adopt the common sense and well-settled Federal framework for analyzing both the counterclaims and third-party claims.

## B. In any event, the Dental Group's claims should have been severed, not dismissed.

The trial court clearly believes that when it comes to the TMFPA, the State is entitled to exclude whatever claims it wants to exclude, even if those claims come from another party. (CR 65). Assuming, *arguendo,* that is the case, the Dental Group's claims against Xerox are not barred as a matter of law, they are just not permitted to be adjudicated as part of a TMFPA case. Thus, the trial should have severed the third party claims against Xerox, not struck them. Striking the claims creates possible statute of limitation concerns, as well as concerns about res judicata, collateral estoppel, and other possible affirmative defenses.

CONCLUSION

In *Harlingen I* and *Harlingen II,* the State tried to interpret the law to suit its immediate needs in those particular cases. Its interpretation in those case defied plain language and common sense, and it led to untenable results that infringed on

due process for those caught in its nets. This case is no different. The idea that defendants can be forestalled from bringing counterclaims and third-party claims is anathema to the concepts of due process and judicial economy.

**PRAYER**

Appellants pray this court:

1) reverse the trial court order granting the State's Plea to the Jurisdiction so that the Appellants' claims against the State may proceed in this case, and

2) reverse the trial court order granting the State's Motion to Dismiss so that the Appellants' claims against the third party Xerox may proceed in this case, or

3) in the alternative, reverse the trial court's grant of the Motion to Dismiss the Appellants' third party claims, and instruct the court to sever the Appellants' third party claims against Xerox into a different cause.

_____
Jason Ray
RIGGS & RAY, P.C.
700 Lavaca, Suite 920
Austin, Texas 78701
Telephone: (512) 457-9806
Facsimile: (512) 457-9866
*jray@r-alaw.com*

E. Hart Green

Mitchell A. Toups
WELLER, GREEN, TOUPS & TERRELL, L.L.P.
Post Office Box 350
Beaumont, Texas 77704-0350
Telephone: (409) 838-0101
Telecopier: (409) 832-8577
*hartgr@wgttlaw.com*
*matoups@wgttlaw.com*

**ATTORNEYS FOR DR. BEHZAD NAZARI, D.D.S. D/B/A ANTOINE DENTAL CENTER, DR. BEHZAD NAZARI, HARLINGEN FAMILY DENTISTRY, P.C. A/K/A PRACTICAL BUSINESS SOLUTIONS, SERIES LLC, JUAN D. VILLARREAL D.D.S., SERIES PLLC D/B/A HARLINGEN FAMILY DENTISTRY GROUP, DR. JUAN VILLARREAL, RICHARD F. HERRSCHER, D.D.S., M.S.D., P.C., DR. RICHARD F. HERRSCHER, M & M ORTHODONTICS, PA, DR. SCOTT MALONE, DR. DIANA MALONE, MICHELLE SMITH, NATIONAL ORTHODONTIX, MGMT., PLLC, DR. JOHN VONDRAK, RGV SMILES BY ROCKY SALINAS, D.D.S. PA, AND DR. ROCKY SALINAS.**

## CERTIFICATE OF COMPLIANCE

I certify that this Brief complies with TRAP Rule 9.4 and contains 7,815 words in Times New Roman typeface of 14-point.

_____
Jason Ray

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Response to Request for Disclosure was served via e-mail and e-service on the 19th day of June, 2015 on the following:

### *Counsel for Plaintiff State of Texas*

Raymond C. Winter
Chief, Civil Medicaid Fraud Division
Reynolds B. Brissenden
Assistant Attorneys General
**Office of the Attorney General**
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 936-1709
Facsimile: (512) 936-0674
E-mail: raymond.winter@texasattorneygeneral.gov
E-mail: reynolds.brissenden@texasattorneygeneral.gov

### *Counsel for Xerox Corporation, et al.*

Robert C. Walters
**Gibson, Dunn, & Crutcher, LLP**
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
E-mail: RWalters@gibsondunn.com

W. Curt Webb
Constance H. Pfeiffer
**Beck Redden, LLP**
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720
E-mail: cwebb@beckredden.com
E-mail: cpfeiffer@beckredden.com

Eric J. R. Nichols
Christopher R. Cowan
**Beck Redden, LLP**
515 Congress Avenue, Suite 1750
Austin, Texas 78701
Telephone: (512) 708-1000
Facsimile: (512) 708-1002
E-mail: enichols@beckredden.com
E-mail: ccowan@beckredden.com

*Counsel for Defendants/Third-Party Plaintiffs*

E. Hart Green
Mitchell A. Toups
**WELLER, GREEN, TOUPS & TERRELL, L.L.P.**
Post Office Box 350
Beaumont, Texas 77704-0350
Telephone: (409) 838-0101
Facsimile: (409) 832-8577
E-mail: hartgr@wgttlaw.com
E-mail: matoups@wgttlaw.com
*Counsel for Defendants*

Richard B. Pecore
**LILES PARKER, PLLC**
3400 N. McColl Rd., Suite F-35
McAllen, Texas 78501
Telephone: (202) 298-9750
Facsimile: (202) 337-5804
E-mail: rpecore@lilesparker.com
*Counsel for RGV Smiles by Rocky Salinas, DDS PA,
and Dr. Rocky Salinas*

Robert M. Anderton
**Law Offices of Hanna & Anderton**
900 Congress Avenue, Suite 250
Austin, Texas 78701
Telephone: (512) 477-6200
Facsimile: (512) 477-1188
E-mail: andertonr@msn.com
*Counsel for Richard F. Herrscher, DDS,
MMSC, PC and Dr. Richard F. Herrscher*

J.A. "Tony" Canales
**CANALES & SIMONSON, P.C.**
2601 Morgan Ave.
P.O. Box 5624
Corpus Christi, Texas 78465-5624
Telephone: (361) 883-0601
Facsimile: (361) 884-7023
E-mail:
tonycanales@canalessimonson.com
*Counsel for M&M Orthodontics, P.A.,
Dr. Scott Malone, Dr. Diana Malone,
Michelle Smith, National Orthodontix
Mgmt., PLLC and Dr. John Vondrak*

Oscar X. Garcia
**Law Offices of Oscar X. Garcia**
302 Kings Highway, Suite 112
Brownsville, Texas 78521
Telephone: (956) 554-3000
Facsimile: (956) 554-3248
E-mail: oxgarcia@aol.com
*Counsel for Dr. Vivian Teegardin*

Philip H. Hilder
William B. Graham
**Hilder & Associates, PC**
819 Lovett Boulevard
Houston, Texas 77006
Telephone: (713) 234-1416
Facsimile: (713) 655-9112
E-mail: philip@hilderlaw.com
E-mail: will@hilderlaw.com
*Counsel for Dr. Wael Kanaan*

_____
Jason Ray

# APPENDIX I


Order Granting State's Plea to the
Jurisdiction and Motion to Dismiss
Third Party Claims

April 28th, 2015
Judge Stephen Yelenosky

Filed in The District Court
of Travis County, Texas

APR 28 2015

At_____1.39 p.M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-14-005380

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| DR. BEHZAD NAZARI, D.D.S. | § | TRAVIS COUNTY, TEXAS |
| D/B/A ANTOINE DENTAL | § | |
| CENTER, DR. BEHZAD NAZARI, | § | |
| DR. WAEL KANAAN, | § | |
| HARLINGEN FAMILY | § | |
| DENTISTRY, P.C., N/K/A, | § | |
| PRACTICAL BUSINESS | § | |
| SOLUTIONS, SERIES LLC, JUAN | § | |
| D. VILLAREAL D.D.S., SERIES, | § | |
| PLLC D/B/A HARLINGEN | § | |
| FAMILY DENTISTRY GROUP, | § | |
| DR. JUAN VILLAREAL, DR. | § | |
| VIVIAN TEEGARDIN, RICHARD | § | |
| F. HERRSCHER, D.D.S., M.S.D., | § | |
| P.C., DR. RICHARD F. | § | |
| HERRSCHER, M & M | § | |
| ORTHODONTICS, PA, DR. SCOTT | § | |
| MALONE, DR. DIANA MALONE, | § | |
| MICHELLE SMITH, NATIONAL | § | |
| ORTHODONTIX, MGMT, PLLC, | § | |
| DR. JOHN VONDRAK, RGV | § | |
| SMILES BY ROCKY L. SALINAS, | § | |
| D.D.S. PA, AND DR. ROCKY | § | |
| SALINAS | § | 53RD JUDICIAL DISTRICT |
| | § | |
| *Defendants.* | § | |

## ORDER GRANTING STATE'S PLEA TO THE JURISDICTION
## AND MOTION TO DISMISS THIRD PARTY CLAIMS

On April 15, 2015, the Court heard the State of Texas's Plea to the Jurisdiction, Plea

in Bar and Motion to Dismiss Third Party Claims, filed on January 20, 2015. All parties

appeared through their respective counsel and announced ready.

 

D-1-GN-14-005380
page 2 of 2

Having considered the Pleas, Motion, response briefs, and arguments of counsel, the Court ORDERS that the State of Texas's Plea to the Jurisdiction is GRANTED. Defendants' counterclaims against the State are DISMISSED with prejudice. The Court further ORDERS that the State of Texas's Motion to Dismiss Third Party Claims is also GRANTED. Consistent with this Court's rulings in the State's litigation against Xerox, the Court finds that the State is entitled to bring this action against defendants to the exclusion of other parties. Defendants' third party claims against Xerox are DISMISSED.

Signed this 28th day of April, 2015

Judge Stephen Yelenosky

2

384